178 So.2d 421 (1965)
Raymond S. MUSSO et ux.
v.
PICADILLY CAFETERIAS, INC., et al.
No. 6296.
Court of Appeal of Louisiana, First Circuit.
July 1, 1965.
Rehearing Denied September 27, 1965.
Writ Refused November 23, 1965.
*422 Louis G. Baine, Jr., of Seale, Hayes, Smith & Baine, Baton Rouge, for appellants.
Jack N. Rogers, Charles W. Franklin, of Franklin & Keogh, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
This is a tort action by Raymond S. and Helen Ann Musso, husband and wife, to recover damages for personal injuries to Mrs. Musso's mouth and jaw and incident medical expense, occasioned by a cherry stone or pit contained in a slice of cherry pie being eaten by said plaintiff while a patron in the cafeteria owned and operated by defendant, Piccadilly Cafeterias, Inc., sometimes hereinafter referred to simply as "Picadilly."
Named defendants in plaintiffs' petition are (1) Piccadilly Cafeterias, Inc., and its insurer, National Surety Corporation; (2) Jebavy-Sorenson Orchard Company (packer of the cherries) and its insurer, Citizens Mutual Automobile Insurance Company, and (3) Standard Brands, Inc., (distributor of the cherries), and its insurer, Employers Liability Assurance Corporation, Ltd.
Piccadilly responded to plaintiffs' petition by denying liability and instituting a third party demand against the remaining defendants praying for indemnification and, alternatively, contribution in the event Piccadilly should be cast in judgment.
Certain declinatory exceptions filed on behalf of Jebavy-Sorenson Orchard Company and its aforesaid insurer were overruled. On the trial below, said defendants stipulated their assumption of any liability decreed on the part of Standard Brands, Inc., and its insurer, Employers. Before submission of the case to the trial court, plaintiffs dismissed their actions against all defendants excepting Piccadilly and its aforenamed insurer. After trial, judgment was rendered in favor of plaintiff, Raymond S. Musso in the sum of $420.00 and in favor of Mrs. Musso in the amount of $4,000.00. Judgment was also rendered dismissing and rejecting the third party demand of Piccadilly and National Surety Corporation. From this adverse decision both said defendants have appealed. Appellants aver the trial court erred in awarding damages in favor of plaintiffs and alternatively maintains the court below wrongfully dismissed *423 and rejected their third party complaint.
The record presents little dispute, if any, concerning the circumstances attending the incident upon which this lawsuit is predicated. It is conceded that on February 18, 1963, Mrs. Musso, while dining with her husband at one of defendant's cafeterias, had for dessert a piece of cherry pie. While eating the pie, Mrs. Musso encountered an unobserved cherry stone or pit which broke a prosthetic device or denture she had worn for approximately ten years. As a result, she sustained serious and painful injuries to the joint of her right jaw and its musculature.
In both brief and oral argument before this Court, able counsel for appellants maintains plaintiffs have couched their demands solely in tort and must therefore rely entirely upon their allegations of negligence on the part of defendant's employees with respect to the manner in which the reputedly unwholesome item of food was prepared. In this connection illustrious counsel for appellants argues appellees may not prevail on the principle of breach of the implied contractual warranty of wholesomeness applicable to the vendor of foods to a consumer because of appellees asserted failure to allege breach of such implied warranty in their petition. On this score, counsel for appellants contends the trial court erred in awarding damages to plaintiffs on the theory of breach of implied warranty notwithstanding his conclusion the presence of a cherry pit or stone in a cherry pie does not constitute a "foreign substance."
Our consideration of the oral reasons for judgment dictated into the record by our esteemed colleague below, indicates that, whereas he did not consider the presence of a cherry pit a foreign matter in a cherry pie, nevertheless he felt it was defendant's duty to provide a product which could be ingested by a human without the possibility of ill effect therefrom. His reasons further indicate he considered defendant's employees negligent in that no special effort was made to detect and remove pits or stones from the cherries used in baking pies but rather extracted only such pits and stones as were revealed in the process of baking such pies.
The record reflects the court below made the following finding:
"At the request of counsel for Piccadilly, the Court does not feel as alleged in plaintiff's petition, Paragraph 7, Subsection D, that the cherry pits were a foreign matter; however, the Court does not feel that this is relevant to the decision."
In dismissing appellant's third party demand, our esteemed brother below concluded the testimony of defendant's baker showed he only found cherry pits "now and then," and "never more than two or three in a can." He further concluded Piccadilly's employees were aware that the cans of pitted cherries purchased from the aforesaid distributor sometimes contained cherry pits and further that the contents of the can were not unfit for human consumption.
From the foregoing it is apparent the trial court was of the opinion a restaurateur who sells food for human consumption is the absolute insurer of its wholesomeness and is liable to the consumer for any injury or damage resulting from the partaking thereof, notwithstanding its fitness for human consumption and the absence therefrom of foreign matter.
Our jurisprudence has long been established to the effect that where food is sold at a public eating place to be consumed on the premises, the keeper of such a place is at fault if such articles prove to be unwholesome or deleterious because, in all cases, it is readily possible for him to know whether the quality of the ingredients or the articles of food into which they are transformed, is such as to render the product fresh and fit for human consumption. Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906, 40 L.R.A.,N.S., 480.
*424 In McAvin v. Morrison Cafeteria Company of Louisiana, 85 So.2d 63, the Orleans Court of Appeal (Fourth Circuit) enunciated the duty of the vendor of foodstuffs as follows:
"* * * the seller of foodstuffs is bound to warrant their wholesomeness and * * * every one should know of the qualities of the things he manufactures and sells and * * * the lack of such knowledge is imputed to him as a fault rendering him liable to the purchaser for any vices or defects of the things."
More recently, in Gilbert v. John Gendusa Bakery, Inc., La.App., 144 So.2d 760, our brothers of the Fourth Circuit, in considering an instance of acute gastroenteritis induced by a child partaking of a doughnut containing bugs or other foreign matter, stated the duty of care owed by the vendor of foodstuffs to the consumer in the following language:
"In cases of this type, the manufacturer and the vendor of foodstuff designed for human consumption, both, are virtually insurers that such merchandise is pure, wholesome and free from foreign materials and deleterious substances."
Nevertheless, the restaurateur is not the absolute insurer of his customers. In order to recover from such a vendor, plaintiff must show the food in question was unwholesome, deleterious or contained a vice or defect. We have been cited no authority from our own jurisprudence holding that a vendor of food to a customer for consumption on the premises is the absolute insurer of the purchaser and is liable under any and all circumstances for illness or injury resulting from the buyer partaking thereof.
After careful consideration of plaintiff's petition, we find no merit in defendant's contention it fails to contain allegations charging appellant with breach of the implied warranty of wholesomeness attending the sale. We note Article 8 of appellee's petition which alleges defendant breached the legal duty owed plaintiff as a customer by leaving seeds in a cherry pie in violation of appellee's right to assume the pie in question to be wholesome and safe to eat. We construe the foregoing, coupled with the accompanying contention of applicability of the doctrine of res ipsa loquitur, to constitute invocation of the rule of implied warranty of wholesomeness applicable in cases of this character.
As we view the present case, the specific point to be resolved is whether a cherry pit or stone is a deleterious or harmful foreign matter or substance in a cherry pie.
The precise question is apparently res nova quoad our own jurisprudence.
We note, however, the analogous Federal case of Arnaud's Restaurant, Inc. et al. v. Cotter, 5 Cir., 212 F.2d 883 (certiorari denied, 384 U.S. 915, 75 S.Ct. 295, 99 L.Ed. 717), which considered the question of what constitutes a foreign substance. We have carefully reviewed all cases cited by able counsel for appellees and note that each concerns an instance involving illness or injury caused by the partaking of spoiled food or edibles or beverages containing obviously foreign substances such as bacteria, insects, glass particles, metal and other completely alien matters. Such cases, however, are not necessarily controlling of the case at bar.
In the Arnaud's Restaurant case, supra, a piece of crab shell in an order of pompano en papillote was held to be a foreign substance because crab meat is not an ingredient for this particular dish. In so concluding the Federal Court thusly distinguished the Arnaud case, supra, from the well established line of jurisprudence holding that substances natural to the food served and inadvertently left in a dish served a customer, do not constitute foreign matter or harmful deleterious substances for which the vendor may be held liable to the consumer.
*425 The general rule regarding liability of a keeper of a public eating place is stated in Volume 36A, C.J.S. Verbo Food § 61, page 914 et seq., as follows:
§ 61. Liability of Keeper of Public Eating Place
A keeper of a public eating place must use due care to see that the food served is fit for human consumption, and is liable for an injury caused by his negligence in failing to observe this duty.
A keeper of a public eating place, engaged in the business of serving food to customers, is bound to use due care and see that the food served to his customers, at his place of business, is fit for human consumption and may be eaten without its causing injury, and for an injury caused by negligence in failing to observe this duty to his patrons such keeper is liable. It has been held that a seller of food, at a public eating place, to be consumed on the premises, is presumed to know of any unwholesome condition of the food and is liable for damages to a purchaser who is made ill on account of such unwholesomeness. According to some authorities an innkeeper is not the insurer of the food he serves, and is not liable in the absence of negligence, but according to other authority he is; and the duty imposed by a statute may be so exacting as to render a restaurant keeper practically an insurer, and no less liable when he buys the unfit food from others than when he makes it himself. A restaurant keeper must use the same care in preparing food for patrons who have not yet entered the restaurant as for those who have. One maintaining a public eating place has been held to be subject to a statute forbidding the sale of adulterated food so that the presence of particles of glass in a beverage served by him is negligence per se.
Cited under footnote 15, Volume 36A C.J.S. Food page 916, we note the Ohio case of Clark Restaurant Co. v. Simmons, 29 Ohio App. 220, 163 N.E. 210, and the Texas case of Brumit v. Cokins, Civ.App., 281 S.W.2d 154, wherein it was held statutes adopted by the legislatures of those states impose so exacting a duty upon a restaurant keeper as to constitute him the virtual insurer of the safety and welfare of his patrons insofar as concerns food served. We also observe the Missouri case of Smith v. Carlos, 215 Mo.App. 488, 247 S.W. 468, in which, without statute, the Missouri court held the vendor of food the virtual insurer of his customers.
While the hereinabove cited decisions of our own courts impose the duty of great care upon the server of food which is either spoiled, contaminated or contains substances foreign thereto such as glass, insects or metal, it would appear that only a special statute would align Louisiana with the small minority of jurisdictions which impose absolute liability upon the restaurateur and render him liable for injuries resulting from substances natural to the food served and inadvertently left therein.
Our research of the question discloses that the vast majority of jurisdictions which have considered the question appear to follow the rule announced in Mix v. Ingersoll Candy Co., 6 Cal.2d 674, 59 P.2d 144, wherein the Court, interpreting a statute requiring food be "reasonably fit for human consumption," stated:
"Although it may frequently be a question for a jury as the trier of facts to determine whether or not the particular defect alleged rendered the food not reasonably fit for human consumption, yet certain cases present facts from which the court itself may say as a matter of law that the alleged defect does not fall within the terms of the statute. It is insisted that the court may so determine herein only if it is empowered to take judicial notice of the alleged fact that chicken pies usually *426 contain chicken bones. It is not necessary to go so far as to hold that chicken pies usually contain chicken bones. It is sufficient if it may be said that as a matter of common knowledge chicken pies occasionally contain chicken bones. We have no hesitancy in so holding, and we are of the opinion that despite the fact that a chicken bone may occasionally be encountered in a chicken pie, such chicken pie, in the absence of some further defect, is reasonably fit for human consumption. Bones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones. At least he cannot hold the restaurant keeper whose representation implied by law is that the meat dish is reasonably fit for human consumption, liable for any injury occurring as a result of the presence of a chicken bone in such chicken pie."
The court also stated:
"This is true, but we do not believe that the onerous rule should be carried to absurd limits. Certainly no liability would attach to a restaurant keeper for the serving of a T-bone steak, or a beef stew, which contained a bone natural to the type of meat served, or if a fish dish should contain a fish bone, or if a cherry pie should contain a cherry stonealthough it be admitted that an ideal cherry pie would be stoneless. The case of a chicken bone in a chicken pie is, in our opinion, analogous to the cited examples, and the facts set forth in the first count of the complaint do not state a cause of action." (Emphasis added.)
The case most similar to that under consideration from the standpoint of the type of food involved is that of Courter v. Dilbert Brothers, Inc., 19 Misc.2d 935, 186 N.Y.S.2d 334, wherein it was held a piece of prune pit was not a foreign substance when left in a jar of prune butter, consequently the consumer had no basis for an action for damages allegedly resulting from the presence of foreign matter. Similarly, recovery has been denied for injuries due to a chicken bone in a chicken pie, Lamb v. Hill, 112 Cal.App.2d 41, 245 P.2d 316; a turkey bone in a dish of roast turkey served with dressing, Silva v. F. W. Woolworth Company, 28 Cal.App.2d 649, 83 P.2d 76; a fish bone in a fish dinner, Shapiro v. Hotel Statler Corporation, D.C., 132 F.Supp. 891; a turkey bone in cream turkey, Goodwin v. Country Club of Peoria, 323 Ill. App. 1, 54 N.E.2d 612; a sliver of bone in a pork chop, Brown v. Nebiker, 229 Iowa 1223, 296 N.W. 366; a partially crystallized grain of corn in a package of cornflakes, Adams v. Great Atlantic & Pacific Tea Company, 251 N.C. 565, 112 S.E.2d 92; an oyster shell in a dish of fried oysters, Allen v. Grafton, 170 Ohio St. 249, 164 N.E.2d 167; and a particle of bone in a pork chop sandwich, Norris v. Pig N'Whistle Sandwich Shop, 79 Ga.App. 369, 53 S.E.2d 718.
The rationale of the majority rule as expressed in the cited authorities is that substances which are a natural part of the food served are not considered foreign matter or substances if inadvertently left therein. On this premise it is reasoned that the presence of substances natural to the ingredients or finished product does not constitute breach of the vendor's implied warranty that the food is wholesome and fit for human consumption. The cases further hold that the warranty implicit in the sale of food must be construed in the light of the common knowledge with reference to the nature and character of the food being served. In this respect it is further reasoned common experience dictates that one eating the meat of animals, fowl or fish should do so with the knowledge such foods may contain pieces of bone. For example, in Lamb v. Hill, 112 Cal.App.2d 41, 245 P.2d 316, supra, the court reasoned a customer is not entitled to expect an entirely *427 boneless chicken pie in each and every instance.
We have found only two cases which do not accord with the majority view. In Wood v. Waldorf System, Inc., 79 R.I. 1, 83 A.2d 90, a case involving a chicken bone in chicken soup, the Court held the question was whether the presence of the substance, though natural, if harmful and of such nature as to ordinarily render food unfit for human consumption, could ordinarily be expected to be present in the final product impliedly represented as being fit for human consumption.
In Bonenberger v. Pittsburg Mercantile Co., 345 Pa. 559, 28 A.2d 913, 143 A.L.R. 1417, the court held the question of whether a piece of oyster shell in canned oysters constituted a foreign substance, was an issue for the jury. We note the dissent which criticizes the majority for apparently making a distinction between the rule of the Mix case, supra, regarding chicken bones and cherry pits, and oyster shells. The dissenting members of the Court expressed the view oyster shells are as natural to oysters as chicken bones to chicken and cherry pits to cherries. With this dissenting opinion we are in complete accord.
We believe the majority view on the subject under consideration to be reasonable and sound. It recognizes and affirms the high degree of care imposed upon the server of foods but does not inflict upon him the unconscionable burden of becoming the absolute, unrestricted and unqualified insurer of his customers. If the server permits alien, extraneous matter not constituting a natural part of the ingredients or finished product (such as glass or other noxious substances), to enter his product during preparation or processing, he is liable for breach of his implied duty to serve a product free of foreign, deleterious substances. However, should the restaurant keeper inadvertently leave in the food substances natural to the ingredients or finished product he is not liable to the customer, as the food is not thereby rendered unwholesome and unfit for human consumption. As a result there is no breach of the implied warranty of wholesomeness.
An obvious extension of the foregoing rule must perforce be made where the vendor of foods negligently permits substances natural to the ingredients or finished product to remain in the food served the customer and illness or injury results therefrom. Under such circumstances the restaurant keeper is liable because of his negligence.
We believe the degree of care incumbent upon the restaurant operator in selecting, preparing and cooking food for customers, including the removal of substances natural to the ingredients or finished product, such as bones from fish or meat and stones or seeds from vegetables or fruit, is the same as that which a reasonably prudent man skilled in the culinary art, would exercise in the selection and preparation of food for his own table.
With the foregoing criterion in view, we shall proceed to consider whether defendant's employees negligently permitted the stone to remain in the pie served Mrs. Musso.
The record is uncontroverted to the effect defendant purchased cherries in thirty pound cans labeled as pitted pursuant to government inspection permitting the designation "pitted" being applied to cherries containing not more than one pit for each twenty ounces of fruit.
Mr. Ralph Self, manager of the cafeteria in question for five years, testified he closely supervised the baking of pies and had never previously seen a pit in a can of cherries. Since the incident in question, however, he has found seeds in the approximate ratio of one seed to three thirty pound cans of cherries. Mrs. Musso's case was the first instance of a complaint emanating from the presence of a cherry pit in a cherry pie. His baker had never before reported the presence of pits in cherries.
*428 Manuel Turner, Jr., baker for Piccadilly, testified he was so employed for seven years the last four of which he specialized in the baking of fruit pies exclusively. He stated he baked three or four cherry pies daily and testified he found seeds in the cherries "now and then" or "just occasionally." He customarily poured the pitted cherries from the thirty pound cans into a collander, looked for seeds and removed any seeds visible. Turner conceded he did not feel each cherry individually to check for internal seeds. His testimony is clearly to the effect he removed all seeds which came to his attention. He never found more than two or three seeds in a can. According to Turner, the pits found were ordinarily in the bottom of the can and when he overturned the cherries upon pouring them into the collander the pits would normally be observed on top.
Whereas defendant sought to purchase pitted cherries, defendant could not rely entirely upon the manufacturer's representation that this ingredient contained no stones or pits. It is common knowledge that in processing such fruit for canning, not all pits will be removed and a small number of unpitted cherries may be expected to be encountered in cherries labeled "pitted." It therefore devolved upon defendant to inspect for the presence of such isolated stones or pits and the question is whether the procedure noted was that which a person skilled in the art of cookery would have utilized in baking a cherry pie for his own consumption.
Judged by the criterion applicable, we fail to see wherein defendant's employees were lax or negligent in the manner of inspecting or checking for pits or stones. While it is obviously not impossible to feel or probe each cherry individually in checking for internal, invisible pits, it is equally apparent such a procedure would be most tedious and time consuming. Conceding the members of the Court are not skilled in the culinary art, nevertheless common knowledge and experience impels the conclusion no cuisine expert would separately probe each supposedly pitted cherry before incorporating same into a pie intended for his own consumption. We believe, rather, he would adopt the procedure utilized by defendant's employees, or some similar method, of visually checking for and removing pits or stones discernible to the eye.
Finding no negligence on the part of defendant's employees, the judgment of the trial court in favor of plaintiffs must be reversed and set aside.
Accordingly, the judgment of the trial court in favor of plaintiffs, Raymond S. Musso and Helen Ann Musso, against defendants, Piccadilly Cafeterias, Inc. and National Surety Corporation, is hereby annulled, reversed and set aside and judgment rendered herein in favor of said defendants and against said plaintiffs, rejecting and dismissing said plaintiffs' demands, with prejudice. All costs of these proceedings to be paid by plaintiffs-appellees.
Reversed and rendered.