283 So.2d 302 (1973)
Elizabeth ROTOLO, wife of James LOYACANO
v.
CONTINENTAL INSURANCE COMPANY and Winn-Dixie, La. Inc.
No. 5518.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1973.
C. Edgar Cloutier, Chistovich & Kearney, New Orleans, for defendants-appellants.
Robert E. McDonald, New Orleans, for plaintiff-appellee.
Before LEMMON, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
This is an appeal from a judgment in favor of plaintiff, Elizabeth Rotolo Loyacano, *303 awarding her a total of $2,838.75 in damages due to personal injury, and against defendants, Winn-Dixie, La. Inc. and its insurer Continental Insurance Company (later acknowledged to be The Fridelity and Casualty Company of New York).
On or about May 18, 1970, plaintiff purchased a sealed package of ground meat from a Winn-Dixie food store which is located at 1418 Lafayette Street in Gretna, La. The ground meat was packaged in a plastic bottom container with a clear celluloid covering. Plaintiff returned home and placed the meat, still packaged, into her refrigerator. Within a couple of days she decided to prepare the ground meat into hamburger patties. She unpackaged the meat, prepared patties, seasoned them with salt, and placed them into a pan which she in turn placed into her oven. When the patties were cooked plaintiff placed the pan containing the patties on her kitchen counter. She then broke off a piece from one of the patties and bit into it. She thereupon bit onto a hard substance causing her to suffer a broken upper right second bicuspid.[1] The tooth had to be surgically extracted, along with the necessary bridge work.
In its reasons for judgment the trial court stated that defendant is liable in damages to plaintiff for the breach of warranty implied in the sale of food. Defendants contend that since plaintiff's petition does not contain allegations charging breach of warranty but speaks only in terms of negligence, the judgment is subject to reversal. We are of the opinion that to dismiss plaintiff's suit under this line of reasoning would do plaintiff a substantial injustice and would be contrary to our written law and jurisprudence on the subject.
LSA-C.C.P. art. 854 states as follows:
"Art. 854. Form of pleading
No technical forms of pleading are required.
All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs. As far as practicable, the contents of each paragraph shall be limited to a single set of circumstances."
This article preserves the Louisiana system of pleading facts, and the fact that plaintiff did not mention breach of warranty in her petition will not be fatal to her suit for damages as long as the necessary facts have been pleaded.
Our jurisprudence is to the effect that pleadings should be liberally construed to the end that the pleader will have his day in court and that the ends of justice will be best served. See Phoenix of Hartford Ins. Co. v. United States Rub. Co., 245 So.2d 436 (La.App. 1st Cir. 1970); J. Wilton Jones Co. v. Liberty Mutual Insurance Co., 248 So.2d 878 (La.App. 4th Cir., 1970); Glass v. Vista Shores Club, 221 So.2d 304 (La.App. 4th Cir., 1969). Also, in Boudreaux v. Allstate Finance Corp., 217 So.2d 439 (La.App. 1st Cir. 1968) we find the rule that technical rules of pleading no longer obtain and all doubt must be resolved in favor of the pleader to the end that substantial justice be achieved. In our discussion we should also make note of LSA-C.C.P. art. 862 which states as follows:
"Art. 862. Relief granted under pleadings; sufficiency of prayer
Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief."
Defendant also contends that the trial court erred in finding that defendant *304 breached its warranty. We are referred to a number of cases setting forth the warranty of wholesomeness incumbent on sellers of food. In Walker v. American Beverage Company, 124 So.2d 157 (La.App. 4th Cir., 1960) the court stated as follows:
"[1] The law is well-settled that any processor, bottler or packager of food or drink, for human consumption, warrants it to be absolutely free from harmful or deleterious substances. However, the consumer must prove that the drink or food caused his illness, not merely make it conjectural. LeBlanc v. Louisiana Coca Cola Bottling Co., 221 La. 919, 60 So.2d 873."
In Mushatt v. Page Milk Company, 262 So.2d 520 (La.App. 4th Cir., 1972), the court stated the rule that the buyer of food and drink in sealed containers is entitled to rely upon the fact that the manufacturer represents it to be wholesome and pure. Also, Deris v. Finest Foods, Inc., 198 So.2d 412 (La.App. 4th Cir., 1967) states that the seller of food stuffs is bound to warrant their wholesomeness and everyone should know of qualities of things he manufactures and sells and that lack of such knowledge is imputed to him as a fault rendering him liable to the purchaser for any vices or defects of the things.
On the other hand, the defendant argues to us that a doctrine of strict liability should not be imposed in a case such as this. He urges that those cases which impose strict liability are cases in which some foreign substance was permitted to remain in the food, and that in the present case, the substance causing the damage was a piece of bone, which is natural to meat. He refers us to the case of Musso v. Picadilly Cafeterias, Inc., 178 So.2d 421 (La. App. 1st. Cir., 1965). That case made an exhaustive view of jurisprudence around the country and pointed out the distinction in the duty of the preparer of food stuffs with respect to substances which are natural to the type of food being prepared, and cited with approval the case of Mix v. Ingersoll Candy Co., 6 Cal.2d 674, 59 P.2d 144, in which the following statement appears:
"`* * * It is sufficient if it may be said that as a matter of common knowledge chicken pies occasionally contain chicken bones. We have no hesitancy in so holding, and we are of the opinion that despite the fact that a chicken bone may occasionally be encountered in a chicken pie, such chicken pie, in the absence of some further defect, is reasonably fit for human consumption. Bones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones. * * * Certainly no liability would attach to a restaurant keeper for the serving of a t-bone steak, or a beef stew, which contained a bone natural to the type of meat served, or if a fish dish should contain a fish bone, or if a cherry pie should contain a cherry stonealthough it be admitted that an ideal cherry pie would be stoneless.'"
After considering the jurisprudence, the court in Musso stated:
"The rationale of the majority rule as expressed in the cited authorities is that substances which are a natural part of the food served are not considered foreign matter or substances if inadvertently left therein. On this premise it is reasoned that the presence of substances natural to the ingredients or finished product does not constitute breach of the vendor's implied warranty that the food is wholesome and fit for human consumption. The cases further hold that the warranty implicit in the sale of food must be construed in the light of the common knowledge with reference to the nature and character of the food being served. In this respect it is further reasoned common experience dictates that one eating the meat of animals, fowl or fish should do so with the knowledge such foods may contain pieces of bone. * * *
*305 "[6-8] We believe the majority view on the subject under consideration to be reasonable and sound. It recognizes and affirms the high degree of care imposed upon the server of foods but does not inflict upon him the unconscionable burden of becoming the absolute, unrestricted and unqualified insurer of his customers. If the server permits alien, extraneous matter not constituting a natural part of the ingredients or finished product (such as glass or other noxious substances), to enter his product during preparation or processing, he is liable for breach of his implied duty to serve a product free of foreign, deleterious substances. However, should the restaurant keeper inadvertently leave in the food substances natural to the ingredients or finished product he is not liable to the customer, as the food is not thereby rendered unwholesome and unfit for human consumption. As a result there is no breach of the implied warranty of wholesomeness.
"[9] An obvious extension of the foregoing rule must perforce be made where the vendor of foods negligently permits substances natural to the ingredients or finished product to remain in the food served the customer and illness or injury results therefrom. Under such circumstances the restaurant keeper is liable because of his negligence."
We follow the majority view expressed in Musso. Of course there is a variance in the factual situation here, but we believe the principles announced to be controlling in a consideration of the facts of this case.
In Musso there was ample evidence to show the probability of expectancy of cherry pits in pitted cherries, but unfortunately there is no evidence in the present case concerning the probability of pieces of bone appearing in hamburger. Simply as a matter of general knowledge, we cannot say that we can take judicial notice that a hamburger patty should not contain any pieces of bone whatsoever. The ground meat in question was prepared from trimmings of other cuts of meat and scrapings from bones. The market manager testified that the meat is generally inspected for pieces of bone and other foreign matter and then run twice through the meat grinder. He testified that the meat grinder blade would stop if it hit a large piece of bone, but he readily admitted that it is possible that a small piece of bone could pass through without stopping the blade. The record does not make us aware of how large a piece of bone must be in order to stop the blade, nor how small a piece of bone may be and yet go through the blade.
The trial judge simply found that the substance upon which Mrs. Loyacano broke her tooth was a hard substance, and the dentist testified that it must necessarily be a hard substance in order to break Mrs. Loyacano's tooth in the fashion in which he found it.
It may be said that a product can be considered defective if it does not meet the reasonable expectations of the ordinary consumer as to its safety. It is not the fact that a defect is a natural one which is important to this inquiry, but the fact that the ordinary consumer would expect that he might encounter it, and thus he would normally take his own precautions. A package of ground meat is not expected to be consumed from the sealed package as a bottle of soda water or milk, but is expected to be processed or otherwise altered before consumption by the purchaser. Therefore, it seems to us that the strict liability imposed upon vendors of sealed packages of that nature, cannot be imposed upon the vendor here, except insofar as a foreign object would be concerned. For a natural object, such as a bone, from the only evidence produced in this case, it appears that the inquiry should be directed to the size of the bone left in the ground meat.
Examining the record with this in mind, we find no specification as to size of the pieces of bone, but we do find, as was found by the trial judge, that the bone was *306 of sufficient size and hardness to break a tooth. Since we find no negligence on the part of plaintiff in her handling of the ground meat, we would require, as did the court in Musso, that the defendant must present sufficient evidence to prove its lack of negligence in its handling of the ground meat.
We find that it has failed to carry this burden. The evidence presented is simply that of the market manager who explained in general that the meat was inspected, run through the grinder twice, and the second time placed on trays, which were then wrapped in clear plastic and tendered for sale. The testimony was in general terms, and did not apply specifically to the meat in question. There was no testimony as to the type of examination afforded, and the manager admitted that pieces of bone could get into the meat and through the grinder without one being aware of it. Certainly the reasonable expectation of the ordinary consumer is that the processor and vendor of ground meat would exercise the same care as that which a reasonably prudent man skilled in the art of meat handling would exercise in the removal of bones from the meat. We conclude that the defendant negligently left in the ground meat pieces of bone of a larger size than the consumer might reasonably expect, and is responsible for the damages caused.
We now turn our attention to defendant's contentions that the trial court's assessment of damages were too high. In his Reasons for Judgment the trial judge stated that the plaintiff sustained severe pain and discomfort in addition to the loss of her tooth. We will alter the amount of the judgment only when there has been an abuse of discretion on the part of the trial judge. See Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). We find no such abuse of discretion in the present case.
The record discloses much more difficulty than simple loss of a tooth. Mrs. Loyacano suffered immediate pain and bleeding upon biting into the patty, and went the next day to a dentist, Dr. Russell R. DiMarco. His examination revealed a broken upper right second bicuspid, broken down into the bone exposing the main nerve. He testified that this condition would cause considerable bleeding and pain, and after taking an x-ray and removing the portion of the tooth that was bothering her he referred her to an oral surgeon, Dr. Kim. Dr. Kim had to surgically extract the tooth by means of cutting into the gum and chiseling out the roots of the tooth involved. It was necessary to close the incision with sutures, and to follow up the operation by several visits for the purpose of removing the sutures and checking the healing process.
The area of the extracted tooth was painful for a considerable period of time, and it was three months before plaintiff was able to return to Dr. DiMarco and have a permanent bridge installed in place of the broken tooth. Considering the pain involved and the inconvenience caused to plaintiff, in the course of treatment which she undertook, we believe the assessment of damages by the trial court to be proper.
For the above reasons, the judgment of the trial court is affirmed and defendant is assessed all costs of this appeal.
Affirmed.
LEMMON, Judge (concurring).
If strict liability is the law of Louisiana in cases involving injury from consumption of food, I see no reason to decide this case on negligence concepts involving standards of care.[1] The majority opinion seems to *307 hold that Winn-Dixie failed to meet a burden of proving that it exercised due care in processing the ground meat, which indicates to me that Winn-Dixie would have won the case had it sustained this burden.
In my view the consumer of food is absolutely entitled to a packaged product which is reasonably safe for its intended use. When this consumer sustains an injury caused by normal use of the food product, he should be entitled to recover damages upon proving (1) that he has been injured by the product, (2) that the injury occurred because the product was defective or unreasonably unsafe, and (3) that the defect or unsafe condition existed when the product left the hands of the particular defendant.
In the present case the plaintiff adequately proved (1) that she was injured because of eating the ground meat, (2) that the injury occurred because the boneless ground meat contained bone particles which rendered the food unreasonably unsafe when eaten in a normal manner, and (3) that the unsafe condition existed when Winn-Dixie sold the meat to her. She is therefore entitled to recovery.
Whether or not Winn-Dixie used reasonable care in processing the meat is irrelevant to plaintiff's demand in this case (although the standard of care used in the processing operation by one of several defendants may be relevant as to the recovery between defendants on an incidental demand or as to recovery by a consumer from one of several defendants). After plaintiff satisfactorily proved that the boneless ground meat contained harmful bone particles when Winn-Dixie sold the food, then reasonable care by Winn-Dixie in the processing operation became irrelevant to its liability to the consumer.
The pronouncements in the Musso case were in my opinion too general and too broad.[2] The crucial issue in this type of case involving "natural" substances in food is whether the presence of the substance caused the food to be unreasonably unsafe. In other words, if the ordinary consumer would reasonably expect to encounter the "natural" substance in the food, then the food is not unreasonably unsafe. In such a case the consumer, being unable to prove the elements necessary to impose strict liability, may alternatively attempt to prove actual negligence, in which case the use of reasonable care is relevant. In the present case, however, I believe that the ordinary customer would not reasonably expect to encounter bone particles in boneless ground meat and that meat containing such particles is not reasonably safe. Therefore, the plaintiff has made out a case based on strict liability and should recover irrespective of proof of negligence.
NOTES
[1] The exact nature of the hard substance is unknown. Presumably it was a piece of bone since subsequent examination of the patty revealed pieces of bone remaining. Tr. 37.
[1] Inasmuch as liability of the food processor to the consumer is in tort and not in contract, I also see no reason to employ concepts of implied warranty borrowed from the law of sales contracts.
[2] I particularly disagree with the statement in Musso that absolute liability inflicts an "unconscionable burden" upon the server (or processor) of foods. That statement depends upon one's viewpoint as to whom the law should protect, the consumer of an unreasonably unsafe product or the seller or processor of such a product.