[No. G013711. Fourth Dist., Div. Three. Sept. 30, 1994.]

GRACE JOYCE FORD, Plaintiff and Appellant, v.
MILLER MEAT COMPANY et al., Defendants and Respondents.

**COUNSEL**

John L. Dodd, Karen J. Dodd and Jerry N. Gans for Plaintiff and Appellant.

Mendes & Mount, David A. Robinson and Joan Havens for Defendants and Respondents.

Opinion

**SONENSHINE, J.**—Grace Joyce Ford appeals judgments in favor of Miller Meat Company (Miller) and Alpha Beta Company (Alpha Beta) in a nonjury

trial. Ford sought to recover damages for injuries sustained when she bit into a fragment of bone contained in ground beef purchased at an Alpha Beta supermarket.

We affirm. Our Supreme Court in *Mexicali Rose* v. *Superior Court* (1992) 1 Cal.4th 617 [4 Cal.Rptr.2d 145, 822 P.2d 1292] articulated principles of liability in the context of a diner's injuries caused by food served in a restaurant. *Mexicali Rose* expressly limited its holding "to commercial restaurant establishments" (*id.* at p. 619, fn. 1), where the patron plays no part in preparation of the food and thus has little, if any, opportunity to examine the ingredients for the presence of potentially harmful substances. We find *Mexicali Rose*'s reasoning of even greater force where there has been a retail sale of meat to a consumer who herself has prepared the injurious food.

### Factual and Procedural Background

On January 30, 1989, Ford bought packaged ground beef from Alpha Beta, took it home and, while she was browning it for tacos, removed a small portion to taste. She bit down on something hard and damaged a tooth. When she spit out the meat, she observed a "tiny" bone fragment which she estimated could have been up to a quarter of an inch at its largest diameter. She sued Alpha Beta and Miller, the meat supplier, alleging causes of action for strict product liability, breach of warranty and negligence. The parties waived a jury and proceeded to trial in November 1992.

The issues of liability and damages were bifurcated. Ford's entire liability case consisted of her own testimony. She presented no evidence against Miller, and its motion for nonsuit was granted.[1] Alpha Beta's meat manager, Jeff Bear, testified Miller supplies prepackaged ground beef in four-pound rolls. Alpha Beta removes the meat from the packages, regrinds it and repackages it for sale. In the typical regrinding process, the meat handler breaks the ground beef into handful-size pieces, visually inspects them and places them in a grinder. The meat is reground into a "mush," and then machine-compacted through a steel plate perforated by holes three to four millimeters in diameter. The ground beef emerges in the tubular, spaghetti-like strands familiar to consumers. Although it is not absolutely impossible that anything larger than three or four millimeters will pass through the steel plate, it is "very unlikely." The meat handler observes the entire operation, from start to finish. The grinder is not left unattended. The reground meat is packaged in styrofoam and sealed in plastic wrap for sale in the Alpha Beta market.

---

[1] No further mention of the case against Miller is necessary. Ford does not allude to Miller's nonsuit until the final two paragraphs of her brief, and then only repeats, in truncated form, her theories against Alpha Beta. As will be seen, they are without merit.

At the conclusion of the above testimony, the court gave judgment in favor of Alpha Beta. It found the theories of strict liability and breach of implied warranty did not apply. As for negligence, it stated, "It seems . . . if we look at the totality of the situation here, . . . the plaintiff has not met its burden . . . . The description of [the bone fragment] by the plaintiff indicates that she probably was in error in describing the size of it. From what appears to be the only source of processing ground meat, it would have had to have been smaller than [one-quarter of an inch.] [¶] According to my quick calculations, a three to four millimeter aperture would mean that the bone fragment would have to be within one-eighth of an inch or smaller. That is, the court [will] not find under those circumstances that anyone would have a reasonable expectation of having such small particles of bone removed from hamburger."

## Discussion

██ Initially, we note that although the parties contend the court granted Alpha Beta's motion for nonsuit, in a trial by the court a motion for nonsuit is not recognized. The correct motion is for judgment pursuant to Code of Civil Procedure section 631.8, the purpose of which is to enable the court, after weighing the evidence at the close of the plaintiff's case, to find the plaintiff has failed to sustain the burden of proof, without the need for the defendant to produce evidence. (*Heap* v. *General Motors Corp.* (1977) 66 Cal.App.3d 824, 829 [136 Cal.Rptr. 304].) " '. . . In weighing the evidence, the trial judge may exercise the prerogatives of a fact trier by refusing to believe witnesses and by drawing conclusions at odds with expert opinion. If the motion is granted, his [or her] findings are entitled to the same respect on appeal as any other findings and are not reversible if supported by substantial evidence. [Citations.]' " (*Id.* at pp. 829-830.)

The court found Ford must have overestimated the size of the bone fragment which could not have been larger than one-eighth of an inch. We are bound by that factual determination and do not reweigh the evidence or reassess issues of credibility. (*Orange County Employees Assn.* v. *County of Orange* (1988) 205 Cal.App.3d 1289, 1293-1294 [253 Cal.Rptr. 584].)

I

Plaintiff's first argument is: (1) Under *Mexicali Rose* v. *Superior Court,* *supra,* 1 Cal.4th 617, injury-producing foreign substances in food give rise to claims for strict liability and breach of warranty, but natural substances do not. (2) The bone fragment Ford bit into cannot be deemed a natural substance because ground beef is pulverized and there is nothing natural

about its containing pieces of bone large enough to produce an injury. (3) Since the bone fragment is not natural, it is foreign; therefore (a) it renders the ground beef defective, subjecting Alpha Beta to strict liability, and (b) it renders the ground beef unfit for consumption, subjecting Alpha Beta to liability for breach of the warranty of fitness. (4) The court erred in eliminating Ford's theories of strict liability and breach of the implied warranty.

Ford misconstrues *Mexicali Rose,* in which the plaintiff sued a restaurant for negligence, strict liability and breach of the implied warranty, alleging he suffered throat injuries from a one-inch chicken bone contained in a chicken enchilada. The trial court overruled the restaurant's demurrer to the complaint; the Court of Appeal issued a writ of mandate directing the lower court to sustain the demurrer. The Supreme Court affirmed the judgment of the Court of Appeal insofar as its order eliminated the causes of action for strict liability and breach of the implied warranty. (It reversed with regard to the negligence theory of liability, a point which will be discussed more fully below.)

At the outset, the *Mexicali Rose* court noted it had granted review for the purpose of reexamining the foreign-natural test of *Mix* v. *Ingersoll Candy Co.* (1936) 6 Cal.2d 674 [59 P.2d 144], which held there could be no tort or implied warranty liability for injuries caused by substances natural to the food served. (*Mexicali Rose* v. *Superior Court, supra,* 1 Cal.4th 617, 619.) In a discussion tracing the nearly 60-year history of food product suits, the court observed the more recent cases tended to reject the rigid foreign/natural test in favor of a reasonable expectations test, under which the substances "natural to the preparation of the food served" are to be anticipated and thus do not render the food unfit or defective. (*Id.* at p. 630.)

Discarding the foreign-natural rule of *Mix* in favor of the reasonable expectation test, the *Mexicali Rose* court stated, "First, whether bones or other injurious substances ought to be anticipated in a particular dish becomes a question for the trier of fact, unless as a matter of law the food was fit for consumption because the substance was natural to the food served. [Citation.] Second, and more important, this reasonable expectation test focuses not on the components of the dish, but on the final item sold to the consumer and the expectations that are engendered by the type of dish and the type of preparation used in making the dish." (1 Cal.4th at p. 631.)

Most significantly to Ford's claim, *Mexicali Rose* departs from the foreign-natural rule *only* to the extent it bars a negligence claim, *not* to the extent it precludes actions for strict liability and breach of warranty. (*Mexicali Rose* v. *Superior Court, supra,* 1 Cal.4th 617, 632.) With regard to the

latter two theories of recovery, *Mexicali Rose* holds: "If the injury-producing substance is natural to the preparation of the food served, it can be said that it was reasonably expected by its very nature and the food cannot be determined unfit or defective. A plaintiff in such a case has no cause of action in strict liability or implied warranty." (*Id.* at p. 633.)

Confronted with this unequivocal holding, Ford protests the bone fragment was not *natural* to the "pulverized" ground beef, but *Mexicali Rose* answers this claim as well. It expressly adopts the reasoning of an out-of-state case, *Loyacano v. Continental Insurance Company* (La.Ct.App. 1973) 283 So.2d 302, which is indistinguishable from Ford's case. In *Loyacano*, the plaintiff purchased ground beef wrapped in a plastic-bottom container wrapped with clear cellophane. She took it home, refrigerated it for a couple of days, and then used it to make hamburger patties. After browning the patties, she broke off a small piece, bit into a bone fragment and broke her tooth. The *Loyacano* court noted it cannot be said, as a matter of general knowledge, that ground beef should not contain any pieces of bone (*Loyacano v. Continental Insurance Company, supra*, 283 So.2d 302, 305), thus strict liability or breach of warranty may not be imposed "except insofar as a foreign object would be concerned." (*Ibid.*)

Clearly, under *Mexicali Rose*, a bone fragment remains a natural substance under the foreign-natural distinction. Therefore, the trial court correctly determined Ford could not recover on theories of strict liability or breach of implied warranty.

## II

Ford next contends the court should have allowed her to recover on her theory of negligence. She says the doctrine of res ipsa loquitur applies, creating the presumption of negligence on the part of Alpha Beta. In regard to this theory, the *Mexicali Rose* court noted: "A number of decisions have deemed it appropriate to apply the doctrine of res ipsa loquitur, where the instrumentality producing the injury was in the exclusive control of the defendant and the injury would not have occurred if due care had been exercised. We express no opinion on whether the doctrine applies in this case and leave it to the lower courts to determine whether, on the facts of the particular case, the doctrine should apply." (1 Cal.4th 617, 633-634, fn. 9.)

Res ipsa loquitur applies if three conditions are present: "(1) The accident must be caused by an agency or instrumentality under the exclusive control of the defendant; (2) the accident must be of a type which ordinarily does not happen unless someone is negligent; (3) it must not have been due to any

voluntary act or contributory fault of the plaintiff. When these conditions are shown, a presumption arises that the accident arose from want of proper care. [Citations.]" (1 Witkin, Cal. Evidence (3d ed. 1986) Burden of Proof and Presumptions, § 230, p. 185.) Ford did not meet the test. The court made a factual determination the bone fragment was no larger than one-eighth inch. It further determined no one could reasonably expect the vendor to remove such a small particle of bone from ground beef. That determination is the same as finding the presence of the bone fragment could not be attributed to lack of due care, actual or presumed. It is a legally proper determination, which vitiates Ford's res ipsa loquitur theory.

Ford protests that under *Loyacano*, the defendant has the burden of rebutting the presumption of negligence, but she fails to mention all-important facts. In *Loyacano*, there was no evidence regarding the *size* of the bone fragment, or the kind of examination of the ground beef performed by the vendor, or the specifics of the grinding process itself, and the manager "admitted that pieces of bone [of unspecified size] could get into the meat and through the grinder without one being aware of it." (*Loyacano* v. *Continental Insurance Company, supra*, 283 So.2d 302, 306.) For this reason, the plaintiff was entitled to rely on res ipsa loquitur. Even so, the *Loyacano* court observed that there are situations in which res ipsa loquitur would not apply. It stated: "Simply as a matter of general knowledge, we cannot say . . . that a hamburger patty should not contain *any* pieces of bone whatsoever." (*id*. at p. 305, italics added.)

Because Ford relied on the res ipsa loquitur doctrine, she failed to put on any evidence regarding the vendor's duty of due care in processing and packaging ground beef for sale in a retail store. And Alpha Beta's meat manager testified to the process it follows after it receives the ground beef from its supplier, as we have summarized above. There was no evidence of negligent acts or omissions in that procedure. Ford would like us to find negligence in the mere *possibility* that a tiny piece of bone could pass through undetected. However, in accordance with the law discussed, we will not make the food vendor an insurer that the product is utterly free of all potentially harmful particles, no matter what size, of substances which occur naturally in the food being prepared.[2] Obviously, had the evidence established the bone fragment in question was larger than a size which could remain after the grinding process, a negligence claim would be appropriate. But that is not this case.

---

[2]*Evart* v. *Suli* (1989) 211 Cal.App.3d 605 [259 Cal.Rptr. 535], cited by Ford, is of no help to her. At most, it stands for the proposition that summary judgment should not be granted to a defendant when triable issues of fact exist as to whether a bone fragment in hamburger is attributable to the moving defendant's negligence.

The judgments are affirmed. Alpha Beta and Miller shall recover their costs on appeal.

Sills, P. J., and Wallin, J., concurred.