449 So.2d 677 (1984)
Marshall E. TITLE
v.
PONTCHARTRAIN HOTEL and its Liability Insurer the ABC Insurance Company.
No. CA-1415.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 1984.
Writ Denied June 1, 1984.
Marshall E. Title, pro se.
Walter C. Thompson, Jr., Owen A. Neff, Henry E. Yoes, III, New Orleans, for defendant-appellant.
Before SCHOTT, AUGUSTINE and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendant, the Pontchartrain Hotel, appeals a trial court judgment awarding *678 plaintiff, Marshall Title, $2,810.00 in damages for injuries sustained when he bit down on a pearl while consuming a fried oyster at defendant's restaurant.
The trial court's Reasons for Judgment stated: "This is a case of strict liability. The Hotel furnished food that was dangerous for human consumption. The condition was forseeable." Plaintiff was awarded $2,500.00 for pain and suffering and $310.00 in special damages for dental work.
Defendant argues that the trial court erred in imposing strict liability and contends that because the pearl was a natural part of the oyster eaten, the proper standard was one of negligence. Defendant further asserts that it was not negligent.
Plaintiff urges the court to abandon the "foreign-natural" substance test enunciated in Musso v. Picadilly Cafeterias, Inc., 178 So.2d 421 (La.App. 1st Cir.1964), writs ref. 248 La. 468, 469, 179 So.2d 641, and adopt the "reasonable expectation" test used by a number of other jurisdictions.[1] Plaintiff asserts that under this test the defendant would be strictly liable because a customer consuming fried oysters at defendant's restaurant should not reasonably expect to encounter a pearl inside the prepared oyster. Plaintiff additionally requests the court increase the trial court award by $620.00 to cover medical expenses and mental anguish for a future root canal procedure.
THE "FOREIGN-NATURAL" TEST VERSUS THE "REASONABLE EXPECTATION TEST"
The court in Musso, supra, thoroughly reviewed the law of other jurisdictions and noted that the vast majority which had considered the question had adopted the "foreign-natural" test for liability rather than the "reasonable expectation" test. The court stated:
We believe the majority view on the subject under consideration to be reasonable and sound. It recognizes and affirms the high degree of care imposed upon the server of foods but does not inflict upon him the unconscionable burden of becoming the absolute, unrestricted and unqualified insurer of his customers. If the server permits alien, extraneous matter not constituting a natural part of the ingredients or finished product (such as glass or other noxious substances), to enter his product during preparation or processing, he is liable for breach of his implied duty to serve a product free of foreign, deleterious substances. However, should the restaurant keeper inadvertently leave in the food substances natural to the ingredients or finished product he is not liable to the customer, as the food is not thereby rendered unwholesome and unfit for human consumption. As a result there is no breach of the implied warranty of wholesomeness.
Plaintiff complains that the "foreign-natural" test "draws a line," holding liable the purveyor of a foodstuff containing foreign material while arbitrarily exonerating the purveyor of a food when the harm-causing substance happens to be natural to the food itself.
What the plaintiff fails to point out is that the Musso court did not stop with the "foreign-natural" test as defined by other jurisdictions, but gave additional protection to the consumer injured by a "natural substance" in his food by requiring the purveyor prove himself free of negligence:
"An obvious extension of the foregoing rule must perforce be made where the vendor of foods negligently permits substances natural to the ingredients or finished product to remain in the food served the customer and illness or injury results therefrom. Under such circumstances the restaurant keeper is liable because of his negligence."
The Musso court first determined that the defendant could not be held strictly *679 liable on the basis of implied warranty for serving a slice of cherry pie containing a cherry pit, since the pit was natural to the pie's ingredients. Then, the court examined the defendant's preparation of the pie for negligence after enunciating the following standard of care:
We believe the degree of care incumbent upon the restaurant operator in selecting, preparing and cooking food for customers, including the removal of substances natural to the ingredients or finished product, such as bones from fish or meat and stones or seeds from vegetables or fruit, is the same as that which a reasonably prudent man skilled in the culinary art, would exercise in the selection and preparation of food for his own table."
Nine years after the First Circuit decided Musso, this court considered the same issue in Loyacano v. Continental Ins. Co., 283 So.2d 302 (La.App. 4th Cir.1973). Plaintiff broke a tooth when she bit into a bone inside the ground meat she had purchased from defendant Winn-Dixie Food Store. This court quoted extensively from Musso and concluded, "[W]e follow the majority view expressed in Musso.... We believe the principles announced to be controlling in a consideration of the facts of this case." Yet apparently the court then refuted the "foreign-natural" test expressed in Musso and employed the "reasonable expectation" test:
It may be said that a product can be considered defective if it does not meet the reasonable expectations of the ordinary consumer as to its safety. It is not the fact that a defect is a natural one which is important to the inquiry, but the fact that the ordinary consumer would expect that he might encounter it, and thus he would naturally take his own precautions."
If this can be considered an adoption of the "reasonable expectation" test in spite of this court's express approval of the Musso "foreign-natural" test, it should be noted that this court then excepted the defendant from its newly-established strict liability on the premise that the sealed package of ground meat was not intended to be consumed as is, but rather was to be further processed by the individual cooking the meat for a meal. This court then applied the "foreign-natural" test upon the vendor of sealed packages to be further processed by the consumer, explaining:
... it seems to us that the strict liability imposed upon vendors of sealed packages of that nature, cannot be imposed upon the vendor here, except insofar as a foreign object would be considered. For a natural object, such as a bone, from the only evidence produced in this case, it appears that the inquiry should be directed to the size of the bone left in the ground meat. [the size to determine whether defendant were negligent].
Interestingly, having absolved the defendant of strict liability, this court then determined defendant's negligence through a "reasonable expectation" test:
"Certainly the reasonable expectation of the ordinary consumer is that the processor and vendor of ground meat would exercise the same care as that which a reasonably prudent man skilled in the art of meat handling would exercise in the removal of bones from the meat. We conclude that the defendant negligently left in the ground meat pieces of bone of a larger size than the consumer might reasonably expect, and is responsible for the damages caused."
The determination of negligence requires the construction of a "reasonable man" whose "reasonable behavior" must be defined by determined "reasonable expectations." Musso's approach to implied warranty of purveyors of food is a two-pronged one. If the harmful substance is foreign, the defendant is strictly liable and the analysis stops. If the substance is natural to the food, however, the analysis continues: the negligence of the defendant must be determined. It is here, where the reasonableness of defendant's behavior is being determined, that Louisiana's approach might be being mistaken for the "reasonable expectation" test that a minority *680 of other jurisdictions apply in order to decide whether strict liability is to be applied in the first place. Loyacano is not actually applying the minority "reasonable expectation" test for determination of the defendant's strict liability. Rather it applied the "foreign-natural" test to determine that the defendant would not be strictly liable and then moved on to determine negligence using the language of "reasonable expectation." Thus, despite the language that makes Loyacano appear to be support for the minority test, this court did not contradict itself when it stated that it was following the majority view expressed in Musso. Until the Louisiana Supreme Court issues a directive to the contrary, this court will continue to employ the "foreign-natural" test to determine liability in cases such as the one at bar. Because we consider a pearl to be "natural" to a fried oyster, defendant can be held liable only after his behavior is determined to be negligent.
NEGLIGENCE OF DEFENDANT
Because the trial judge considered the defendant strictly liable and refrained from making any judgment on the defendant's negligence, that factual determination is before this court on first impression. Based on a thorough review of the record in this case, we cannot conclude that the presence of a pearl in one of the fried oysters served plaintiff can be attributed to negligent behavior on the part of the defendant.
If the defendant in Musso, supra, could be absolved of negligence for a cherry pit inadvertently left in a slice of pie, certainly the defendant in the instant case cannot be held liable for a pearl appearing in one of its fried oysters. A pit is a hazard present in every cherry; a pearl is a very unusual and unexpectedalthough not impossible natural object to be found imbedded in an oyster which has reached the frying stage.
Plaintiff presented Dr. Dee Dundie, a Ph.D. in Biology, as an expert witness in the field of malocology, the study of mollusks (including oysters). Plaintiff also presented Mr. Joe S. Brown, an oyster shucker and relief fry cook. They testified that even a completely imbedded pearl would create a clearly visible lump in the oyster which when palpitated would be identifiable as a pearl, and that the pearl could be removed with a knife with the oyster remaining intact.
Defendant presented the testimony of Mr. Buddy Weir, Food and Beverage Director of the Pontchartrain Hotel. Three or four months before the incident with plaintiff, Mr. Weir had inspected the processing plant providing defendant's oysters; he explained the thorough rinsing procedures followed by the plant to remove all debris and pearls from the shucked oysters. He also described the restaurant's procedure for frying oysters, explaining that the cook visually inspects a handful of processed oysters for "shells or matter like that on the oyster," then individually breads them, inspecting them "visually and by touch," and finally, places them in the deep fat fryer. When handling the oysters, the cook is instructed not to press so firmly that the skin of the oyster bruises, rendering the oyster unacceptable for frying.
We do not feel that there is anything further the defendant's oyster fryers could reasonably do to eliminate the very slim possibility of a pearl remaining imbedded in an oyster. Intense scrutiny and thorough palpation of every oyster to be served is simply not feasible in any restaurant situation. We do not consider the failure to testify of the fry cook on duty the day of the incident to be detrimental to defendant as we cannot envision the cook remembering the preparation of this one oyster in particular.
Accordingly, we reverse the trial court's decision awarding damages of $2,810.00 to the plaintiff, and hold that the defendant was not negligent. Consequently, we also deny plaintiff's request for increase in damages.
*681 For the foregoing reasons, the decision of the trial court is REVERSED, and plaintiff's suit is dismissed at his cost.
REVERSED.
NOTES
[1] Among these, plaintiff cites in particular: Zabner v. Howard, 201 So.2d 824 (Fla.Dist.Ct.App. 1967); Jim Dandy Fast Food, Inc. v. Miriam Carpenter, 535 S.W.2d 786 (Tex.Civ.App.1976); Ex Parte Morrison's Cafeteria of Montgomery, Inc., 431 So.2d 975 (Ala.1983); O'Dell v. DeJean's Packing Co., Inc., 585 P.2d 399 (Okl.Ct.App. 1978).