713 So.2d 454 (1998)
Donald C. PORTEOUS, Jr.
v.
ST. ANN'S CAFE & DELI and Lafayette Insurance Company.
No. 97-C-0837.
Supreme Court of Louisiana.
May 29, 1998.
Geoffrey H. Longenecker, Madisonville, for Applicant.
Alexander Adam Lambert, John Thomas Holmes, Metairie, for Respondent.
Prior report: 693 So.2d 786.
*455 CALOGERO, Chief Justice.[*]
On January 22, 1995, Donald C. Porteous, Jr. was dining at St. Ann's Cafe & Deli. While eating the second half of an oyster poboy, he bit down onto a small, grey, and roughly round substance, which apparently was a pearl. When plaintiff bit onto the pearl, he broke a tooth and cracked it all the way down the shaft. The plaintiff reported the incident to a waiter. The waiter wrote an incident report and took possession of the remainder of the sandwich and the pearl. Two days later, plaintiff went to his dentist and thereafter underwent dental treatment, which included a root canal and placement of a crown atop the broken tooth. The plaintiff then sued St. Ann's Cafe & Deli and Lafayette Insurance Company, alleging that the defendant was negligent because of the lack of adequate food inspection procedures, which resulted in the presence of an injurious substance and his sustaining injury to his tooth.
In determining whether the defendant was liable for the plaintiff's injuries, the trial court applied the "foreign-natural" test. That test was adopted from the common law. Louisiana courts of appeal have used this common law test to determine the liability of a restaurant when a customer is injured by a harmful substance in the restaurant's food. Melady v. Wendy's of New Orleans, Inc., 95-913 (La.App. 5th Cir. 4/16/96); 673 So.2d 1094; Johnson v. South Pacific Canning Co., 580 So.2d 556 (La.App. 5th Cir. 1991); Riviere v. J.C. Penney Comp., 478 So.2d 965 (La.App. 5th Cir.1985); Title v. Pontchartrain Hotel, 449 So.2d 677 (La.App. 4th Cir.1984); Loyacano v. Continental Ins., 283 So.2d 302 (La.App. 4th Cir.1973); Musso v. Picadilly Cafeterias, Inc., 178 So.2d 421 (La.App. 1st Cir.1965). Under the foreignnatural test, if the injurious substance is foreign to the food, then the restaurant is strictly liable. If the injurious substance is natural to the food, there is no strict liability. Rather, liability is imposed only if the restaurant was negligent in failing to discover and remove the harmful natural substance from the food.
After applying the foreign-natural test, the trial court held that although the injurious pearl was natural to the oyster, the restaurant was negligent, and therefore liable, because of the lack of adequate procedures to ensure that injurious substances, such as a pearl in the oyster, were not served on the po-boys. The plaintiff was then awarded damages plus costs and interest.
The court of appeal recited the facts found by the trial court and declared that the "trial court's determination of credibility and findings of fact will not be disturbed on appeal so long as they are reasonable in light of the record as a whole." The court of appeal concluded that the trial court's finding that the restaurant negligently failed to institute procedures to intercept harmful objects in the oysters was a reasonable finding and would not be disturbed on appeal. Thus, the trial court was affirmed in the court of appeal. Porteous v. St. Ann's Cafe & Deli No. 96-CA-2692 (La.App. 4th Cir. 3/5/97) (unpublished opinion).
We granted certiorari to determine if the law and the facts were properly applied in this restaurant-harmful food product case, a precise matter which has not been addressed in recent decades by this Court. For the reasons that follow, we find that the lower courts erred in applying the common law foreign-natural test. Rather, the proper analysis to determine the defendant's liability is to be found in Louisiana's substantive law as found in the Louisiana Civil Code in the articles relating to liability and damages for offenses and quasi offensesthe traditional duty risk tort analysis.[1] With the entire record now in hand, we hold that, under the *456 traditional duty risk tort analysis, the plaintiff has failed to prove that the defendant breached its duty to act as would a reasonably prudent restauranteur in selecting, preparing and cooking food, including removal of injurious substances. We therefore reverse the judgments of the lower courts.[2]

DISCUSSION
In the recent decades, this Court has not spoken on this issue and the Louisiana Courts of Appeal have borrowed the foreignnatural test from the common law. We decline to adopt that test.[3]
The Civil Code is the chief repository of the substantive law of Louisiana, and as previously indicated, the theory of recovery available to an injured plaintiff to determine the liability of a restaurant in a case of this sort is the determination of negligence with the traditional duty risk tort analysis. See La. Civ.Code Ann. arts. 2315, 2316.

TORT CLAIM
Articles 2315 and 2316 are the codal bases for a claim in tort. Article 2315 states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2316 provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his *457 imprudence, or his want of skill." To determine whether a defendant is negligent, the case usually requires proof of five separate elements: (1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of liability or scope of protection; and (5) damages. Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991) (on rehearing) (citing Fowler v. Roberts, 556 So.2d 1, 4 (La.1989) (on original hearing)). Relative to these five elements, the case at hand turns on two of the elementsthe issue of the defendant's duty and the defendant's breach of dutydiscussion regarding which follows.

Duty of the Defendant
A defendant's duty to conform his conduct to a specific standard may be express or implied, either statutorily or jurisprudentially. Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La.1993). In Louisiana, there is no statute which expressly addresses a commercial restaurant's duty to serve food free of injurious substances.[4] There is, nonetheless, no doubt that there is and should be such a duty. We determine that the duty is the following: A food provider, in selecting, preparing and cooking food, including the removal of injurious substances, has a duty to act as would a reasonably prudent man skilled in the culinary art in the selection and preparation of food.[5]

Breach of Duty
Plaintiff alleges that the defendant restaurant breached its duty by acting unreasonably in the selection, preparation and cooking of the food because the restaurant lacked adequate inspection procedures to detect and remove injurious substances from the food served to its customers. The defendant, on the other hand, asserts that it did not breach its duty because it acted reasonably in the selection and preparation of the food product at issue.
In determining whether a restaurant breached its duty by failing to act reasonably in the selection, preparation and cooking of the food that contained a substance which caused injury, the court should consider, among other things, whether the injurious substance was natural to the food served and whether the customer would reasonably expect to find such a substance in the particular type of food served.[6]
In the present case, the plaintiff was injured when he bit onto a pearl while eating an oyster po-boy in the defendant restaurant. A pearl in an oyster is not entirely rare, but is, indeed, a naturally occurring phenomenon. So long as oysters are harvested and eaten, there will occasionally, though perhaps infrequently, be pearls found in oysters. Furthermore, when eating oysters, a customer should be aware ofand alert to the possibilitythat a pearl may be found within the oyster.
Additionally, at trial, the restaurant manager, Ms. Marvez, testified that an accident like this had never occurred before in her restaurant. Ms. Marvez further stated that the restaurant buys its oysters pre-shucked, pre-washed, and pre-packed from a reputable seafood company. When Ms. Marvez was asked about the restaurant's procedures to ensure that there were no foreign objects in the oysters, she replied that "the cook has to *458 physically hold the oyster and bread it and at that time they could feel if there's anything in there. If it's something large or if it's somethingnow if it's embedded in the oyster, no, we don't dissect the oyster...." She also stated that the cooks have to grab the oysters to bread them, and if they were to find an object, they would remove it. She did not recall any time when she was told that a cook found an object in an oyster. Moreover, although the cooks do not wash the oysters before they are battered, the cooks do visually inspect the oysters and touch them before applying the batter.
In light of the above-described testimony, we determine that the defendant did not act unreasonably in selecting, preparing and cooking the food. There was nothing more the defendant restaurant could reasonably have done to eliminate the small possibility that a customer might find a pearl in an oyster and be injured thereby.[7] The law should not impose upon restaurants the responsibility of dissecting every oyster in order to determine whether there is a pearl formed or forming inside each one. We determine, therefore, under the traditional duty risk tort analysis, that the defendant restaurant did not breach its duty to this plaintiff and, thus, is not liable for the plaintiff's injury.

DECREE
For the foregoing reasons, the judgments of the district court and the court of appeal in favor of plaintiff are reversed. Judgment is rendered in favor of the defendants, dismissing plaintiff's suit with prejudice and at his cost.
DISTRICT COURT AND COURT OF APPEAL JUDGMENTS REVERSED; JUDGMENT RENDERED FOR DEFENDANT; SUIT DISMISSED WITH PREJUDICE AT PLAINTIFF'S COST.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissents and assigns reasons.
The critical issue is whether the pearl in the oyster sandwich caused the food to be unreasonably unsafe. The ordinary customer would not reasonably expect to encounter a pearl in an oyster sandwich. Therefore, an oyster sandwich containing a pearl in not reasonably safe. The plaintiff, having proved that the food served to him was not reasonably safe, should recover, irrespective of proof of negligence.
As in cases involving unreasonably dangerous products, the innocent consumer in a food product case has no method to protect himself or herself. The risk of injury from unreasonably dangerous food should not fall on the back of the innocent consumer, but on the purveyor of the food product who can spread that risk (as was done in this case) with liability insurance.
NOTES
[*] Johnson, J., not on panel. See Rule IV, Part 2, § 3.
[1] Two other areas of substantive law that arguably could apply in this case were the sales and obligation articles on breach of contract and the sales articles on redhibition. See LeBlanc v. La. Coca Cola Bottling Co., 221 La. 919, 60 So.2d 873 (1952); Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906 (1911); Demars v. Natchitoches Coca-Cola Bottling Co., 353 So.2d 433 (La.App. 3rd Cir.1977); Givens v. Baton Rouge Coca-Cola Bottling Co., 182 So.2d 532 (La.App. 1st Cir. 1966); McAvin v. Morrison Cafeteria Co. of La, 85 So.2d 63 (La.App.Orl.1956); Ogden v. Rosedale Inn, 189 So. 162 (La.App.Orl.1939). This Court, however, finds that the duty risk tort analysis in Louisiana negligence law is the proper analysis for this type of case.
[2] Under this Court's standards for granting writs (See Rule X, Section 1 of the Louisiana Supreme Court Rules), the Court does not normally grant simply to review the facts of a case. In this case, we granted the writ because in the jurisprudence of this Court, the legal issue here was an unresolved one. (See Rule X, Section 1(a)(2) of the Louisiana Supreme Court Rules.) After granting certiorari, this Court has the authority to decide any and all issues in the case. La. Const. art. 5, § 5(C).
[3] The following is a more detailed explanation of the two common law tests to which reference was made earlier in this opinion, the foreignnatural test and the reasonable expectation test, which have been utilized by state courts to determine the restaurant's liability, when a plaintiff sustains injuries because of an injurious substance in food he is served in a restaurant. Under either test, courts have no difficulty holding a defendant strictly liable for injuries sustained because of "foreign" injurious substances (such as glass or insects). See LeBlanc v. Louisiana Coca Cola Bottling Co., 221 La. 919, 60 So.2d 873 (1952). But, if the injurious substance is "natural" to the food product, such as bones or shells, courts, depending on whether they follow the foreign-natural test or the reasonable expectation test, are divided as to whether liability should be imposed. See Langiulli v. Bumble Bee Seafood, Inc., 159 Misc.2d 450, 604 N.Y.S.2d 1020 (N.Y.Sup.1993); Jackson v. Nestle-Beich, Inc., 147 Ill.2d 408, 168 Ill.Dec. 147, 589 N.E.2d 547 (1992); Musso v. Picadilly Cafeterias, Inc., 178 So.2d 421 (La.App. 1st Cir.1965).

Under the foreign-natural test, the outset determination is whether the injurious substance is "foreign" or "natural" to the food. As this test evolved nationally, the cases held that if an injurious substance is natural to the food, the plaintiff is denied recovery in all events. Goodwin v. Country Club, 323 Ill.App. 1, 54 N.E.2d 612 (1944); Brown v. Nebiker, 229 Iowa 1223, 296 N.W. 366 (1941); Mix v. Ingersoll Candy Co., 6 Cal.2d 674, 59 P.2d 144 (1936), overruled by Mexicali Rose v. Superior Court, 1 Cal.4th 617, 4 Cal.Rptr.2d 145, 822 P.2d 1292 (1992). But if the injurious substance is foreign, the restaurant is strictly liable. Louisiana Courts of Appeal chose to follow the foreign-natural test to determine the liability of restaurants, but embellished a bit on the strict common law foreign-natural test, in permitting the plaintiff to recover notwithstanding the fact that the injurious substance is natural to the food if the restaurant is negligent in its failing to discover and remove the injurious natural substance. Melady v. Wendy's of New Orleans, Inc., 95-913 (La.App. 5th Cir. 4/16/96); 673 So.2d 1094; Johnson v. South Pacific Canning Co., 580 So.2d 556 (La.App. 5th Cir.1991); Title v. Pontchartrain Hotel, 449 So.2d 677 (La.App. 4th Cir.1984); Loyacano v. Continental Ins., 283 So.2d 302 (La.App. 4th Cir. 1973); Musso v. Picadilly Cafeterias, Inc., 178 So.2d 421 (La.App. 1st Cir.1965).
In time, the foreign-natural test was widely criticized and rejected by many states in favor of the reasonable expectation test. Under the reasonable expectation test, the query to determine liability is whether a reasonable consumer would anticipate, guard against, or expect to find the injurious substance in the type of food dish served. O'Dell v. DeJean's Packing Co., Inc., 585 P.2d 399 (Okl.Ct.App.1978); Jim Dandy Fast Foods, Inc. v. Miriam Carpenter, 535 S.W.2d 786 (Tex.Civ.App.1976); Matthews v. Campbell Soup Co., 380 F.Supp. 1061 (S.D.Tex.1974); Wood v. Waldorf System, Inc., 79 R.I. 1, 83 A.2d 90 (1951); Zabner v. Howard Johnson's Inc., 201 So.2d 824 (Fla.Dist.Ct.App.1967). Whether the injurious substance is natural or foreign is irrelevant. Rather, liability will be imposed on the restaurant if the customer had a reasonable expectation that the injurious substance would not be found in the food product. On the other hand, if it can be shown that the customer should reasonably have expected the injurious substance in his food, that customer is barred from recovery.
[4] There are, however, two revised statutes that set forth the limitation of liability for damages that result from donated food. See La.Rev.Stat. Ann. §§ 9:2799, 9:2799.3.
[5] The duty set out by this Court, in the case at hand, is similar to the language used in Musso v. Picadilly Cafeterias, Inc., 178 So.2d 421 (La.App. 1st Cir.1965), to determine whether the restaurant was negligent in permitting the injurious natural substance to remain in the food. The Musso court stated,

We believe the degree of care incumbent upon the restaurant operator in selecting, preparing and cooking food for customers, including the removal of substances natural to the ingredients or finished product, such as bones from fish or meat and stones or seeds from vegetables or fruit, is the same as that which a reasonably prudent man skilled in the culinary art, would exercise in the selection and preparation of food for his own table.
Musso, 178 So.2d at 427.
[6] These are the determinative factors in the foreign-natural test and the reasonable expectation test, but are only factors to be considered by the court when using the duty risk analysis in negligence law.
[7] In Title v. Pontchartrain Hotel, 449 So.2d 677 (La.App. 4th Cir.1984), the Louisiana Fourth Circuit Court of Appeal was also faced with the issue of whether the defendant was liable for the plaintiff's injuries that resulted from the plaintiff biting onto a fried oyster containing a pearl. The Title court stated that from the evidence at trial (such as visual inspection and individually breading), "there [was not] anything further the defendant's oyster fryers could reasonably do to eliminate the very slim possibility of a pearl remaining imbedded in the oyster. Intense scrutiny and through palpitation of every oyster to be served is simply not feasible in any restaurant situation." Title, 449 So.2d at 680.