JgPHILIP C. CIACCIO, Judge Pro Tem.
This appeal arises from a judgment in favor of plaintiff and against defendant, Piccadilly Cafeterias, Inc. (“Piccadilly”), for damages sustained by plaintiff in this food product case.
FACTS
On October 24, 1996, plaintiff Charlotte Anderson ordered the “Super Dilly” at Piccadilly in the Westmoreland Shopping Center in Baton Rouge. Ms. Anderson testified that after a few bites of the fruit salad, she noticed that it was not as good as usual. Nevertheless, busily engaged in conversation with her lunch companion, she continued eating. According to Ms. Anderson, she eventually noticed that the fruit salad was discolored and “didn’t look good.” She stopped eating the salad, but continued with the rest of her meal.
Within five to ten minutes, Ms. Anderson became nauseous, began suffering severe stomach cramps and vomited. She testified that she and her friend left Piccadilly without finishing their lunch.
Ms. Anderson’s granddaughter, Patrice Hollins, testified that Ms. Anderson arrived at home with vomit on her clothing and in her car. Shortly thereafter, she began suffering from severe diarrhea while the vomiting continued. These symptoms lasted throughout the night. Ms. Anderson went to the emergency room the next morning after noticing blood in her stool. Dr. Kevin Babin diagnosed a Mallory-Weiss tear in the lower esophageal sphincter, a condition that usually results from severe vomiting.
Charlotte Anderson filed suit against Piccadilly alleging breach of warranty or, alternatively, negligence. At trial, Piccadilly presented ample evidence of its prudence in food safety matters. Sandy Plak-idas, General Manger of Piccadilly at Westmoreland for twenty years, testified that he, his product manager and two assistant managers inspected the cafeteria line constantly. Mr. Plakidas testified that according to computer records, Piccadilly at Westmoreland served 45 fruit salads that day and no one else complained of being sick. Rose Smart, the [3“head salad lady” on duty that day, testified that she personally cuts all fruit for the fruit salads, performs taste tests for freshness and throws out everything that is “not right.” She further testified that she checks her refrigerator thermostat first thing each morning. She only makes fifteen servings of fruit salad at one time, all from scratch, and does not begin preparing more until needed.
At the conclusion of the evidence, the lower court found that plaintiff suffered a “vagal response” to the noxious condition of the fruit salad and rendered judgment in favor of plaintiff. In his reasons for judgment, the trial judge stated that “the fruit salad was in a deleterious condition *77 and that the taste, smell, and discolored state of the fruit salad caused the injuries and damages sustained by Ms. Anderson.”
Piccadilly appeals this judgment, alleging that the trial court erred in finding that plaintiff proved by a preponderance of the evidence 1) that the fruit salad was unwholesome or deleterious and 2) that eating the food served by Piccadilly caused plaintiffs illness.
LAW AND ANALYSIS
In a food product case, the traditional duty risk tort analysis will determine the restaurant’s liability. Porteous v. St. Ann’s Café & Deli, 97-0837 (La.5/29/98), 713 So.2d 454. Under this analysis, the plaintiff must show that 1) defendant owed a duty of care to the plaintiff; 2) the risk of harm was within the scope of protection afforded by the duty; 3) defendant breached that duty; and 4) the conduct in question was a cause-in-fact of the harm. Harris v. Stimac, 99-2070 (La.App. 1 Cir. 9/22/00), 768 So.2d 265.
The determination of whether a duty exists under a particular set of circumstances is a question of law for the court. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318; Harris v. Stimac, 768 So.2d at 271. Noting the absence of a statute addressing a restaurant’s duty to its patrons, the Louisiana Supreme Court established that the restaurant must act as a | ¿reasonably prudent man skilled in the culinary art when selecting, preparing and cooking food. Porteous v. St. Ann’s Café & Deli, 713 So.2d at 457.
The next relevant question is whether Piccadilly’s duty of care extends in scope to this particular plaintiff under these particular circumstances. The trial judge found that the fruit salad was in a “deleterious condition.” But the plaintiff, in her appellate brief, abandons any contention that the deleterious nature of the food was caused by toxic bacteria. Rather, plaintiff alleges merely that the fruit salad was “discolored, malodorous and sour tasting.” Plaintiffs symptoms began within fifteen minutes of her first bite of the fruit salad. Both Dr. Kevin Babin, plaintiffs treating physician, and Dr. Louise McFarland, defendant’s expert in food borne diseases, testified that the incubation period for food bacteria is at least one hour, usually much longer. Dr. Babin further testified that plaintiff had no fever, a symptom usually associated with bacterial poisoning, and that no medical test had been performed to establish the presence of such toxins in her bloodstream. Thus, absent any proof of contamination, the trial judge’s finding that the fruit salad was deleterious is manifestly erroneous and clearly wrong.
Plaintiff contends that she likely experienced a “vagal response” to what she perceived to be an unpleasant food. According to Dr. Babin, “[ajnything that’s perceived as being exceptionally noxious can actually stimulate the vagal nerve, ... and can cause either diarrhea or vomiting.” Plaintiff cites Prejean v. Great Atlantic & Pacific Tea Company, Inc., 457 So.2d 60 (La.App. 4th Cir.), writ denied, 462 So.2d 194 (La.1984) as precedent for awarding damages for injuries sustained as a result of a vagal response when the plaintiff did not even eat the food in question. But Prejean involved a roast beef that was “green as grass,” apparently infected with some type of bacteria. The evidence in this case shows nothing more than plaintiffs mere perception that the food was contaminated.
Common knowledge and experience tell us that different people will react differently to the appearance, taste or smell of different foods, whether |Bwholesome or contaminated. But Louisiana courts have *78 never held such an emotional response as the basis for liability without proof that the food was in fact deleterious. The restaurant has no duty to protect the consumer from an emotional response to her own negative perceptions.
Because we find that plaintiffs injuries were outside the scope of Piccadilly’s duty to protect, we find that the trial court erred as a matter of law in granting judgment in favor of plaintiff.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is reversed and Ms. Anderson’s suit is dismissed. Costs of this appeal are assessed to Charlotte Anderson.
REVERSED.