Judge Madeleine M. Landrieu
hThe defendant, Rouse’s Enterprises, LLC d/b/a/ Rouse’s Market (“Rouse’s”) appeals the trial court’s judgment finding it liable for the injuries suffered by the plaintiff, Cynthia Small, and awarding her damages. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
Ms. Small filed a petition against Rouse’s alleging that she had purchased a plate of prepared food from Rouse’s buffet on June 14, 2014 and discovered a human fingernail in the food while she was eating it. Ms. Small claimed that as a result of Rouse’s negligence, she suffered persistent nausea and vomiting requiring medical treatment, as well as mental anguish. Following a bench trial held on May 10, 2016, the trial court rendered a written judgment on May 19, 2016 finding Rouse’s to be at fault and awarding the plaintiff $2500.00 in general damages, plus interest and costs. Rouse’s now appeals that judgment.
J2ISSUES
On appeal, Rouse’s contends that the trial court committed legal error by applying a strict liability analysis rather than a duty/risk analysis to find Rouse’s at fault. Alternatively, Rouse’s argues that the trial court committed manifest error by finding *214 that it breached any duty it owed to Ms. Small.
DISCUSSION
The record does not reflect which standard the trial court employed to determine Rouse’s liability. It is unquestionable, however, that the duty/risk analysis is the appropriate legal standard by which to determine liability in this case. In Porteous v. St. Ann’s Cafe & Deli, 97-0837 (La. 5/29/98), 713 So.2d 454, an action against a restaurant for a deleterious substance (a pearl) present in a customer’s oyster sandwich, the Louisiana Supreme Court rejected the application of strict liability and held that the. proper standard to be applied was a duty/risk -analysis pursuant to the Louisiana Civil Code. See La. C.C. arts. 2315-2317. The Supreme Court stated:
In Louisiana, there is no statute which expressly addresses a commercial restaurant’s duty to serve food free of injurious substances. There is, nonetheless, no doubt that there is and should be such-a duty. :We determine that the duty is the following: A food provider, in selecting, preparing and cooking food, including the removal of injurious substances, has a duty to act as would a reasonably prudent man skilled in the culinary art in the selection and preparation of food.
Id., 97-0837, p. 5, 713 So.2d at 457(Footnotes omitted; emphasis supplied).
Accordingly, the relevant question here is whether Rouse’s breached this duty. Because whether a duty has been breached is a factual question, the trial lacourt’s finding in this regard is reviewed under the manifest error standard. See Hanks v. Entergy Corp., 2006-477 (La. 12/18/06), 944 So.2d 564, 580.
Three witnesses testified at trial. Ms. Small, testified that she went into the Rouse’s supermarket about five to ten minutes after 11:00 a.m. and made a plate of food from the buffet for her lunch. She testified that the food on the buffet appeared fresh and looked undisturbed. Her plate contained black-eyed peas, rice, peach cobbler and some sort of -meat, which she believed was beef or pork roast. She stood in line and paid for the food. Her receipt shows she paid $9.37 and checked out at 11:29 a.m. Because there were no unoccupied tables in the dining area outside the store, Ms. Small decided to eat in her car. She mixed her black-eyed peas and rice together and while eating them, .felt something hard in her mouth. She did not swallow the object. She pulled the object out of her mouth with her finger and discovered it was a human fingernail. She then called the telephone number on her receipt and spoke to a Rouse’s manager, who told her to bring the food back into the store and she would be given a full refund. She went into the store and was offered a refund but declined it, telling the manager she wanted to make a report. She filled out a claim report while the manager took photographs of the container of food she had returned, after which the manager told her an insurance adjustor would be contacting her.
Ms. Small testified that she was gagging and could not stop vomiting so she went to the hospital emergency room. The doctor who examined her told her the fingernail could not hurt her. The hospital records show Ms. Small was given anttjnausea4 medication and was discharged. Ms. Small testified that the medication helped for a few days but her stomach was affected for a few weeks. She would gag every time she thought of the incident, and had no appetite. She no longer eats at .-buffets.
Ms. Small did not know how the fingernail had gotten into the food. She believed the lunch buffet had just been put out *215 when she arrived at the store because the food did not look like it had been touched, but she was not there when the food was put out. She could not say for sure that she was the first customer to take food from the lunch buffet that day.
Ms. Small testified that after the incident she got a letter from Rouse’s indicating that the store was not going to pay her claim because “nothing happened.” Then in September, one day after filing suit, she got a second letter, which informed her that she was banned from..Rouse’s. She testified that she suffered embarrassment and inconvenience on account of being banned from Rouse’s, where she had shopped her whole life.
Charles Bennett, Sr., testified that he is the assistant store manager of the Rouse’s location where Ms. Small purchased the food in question. He was with Ms. Small when she filled out the claim form at the store. He took a photograph of the plate of food she had purchased, and he.indicated on his portion of the incident report that the object in the food appeared to be. a piece of chicken bone rather than a fingernail. He testified that Rouse’s participates in the Serve Safe national training program regarding food safety and that all managers must pass the | sprogram’s exam. He had never before had a complaint of a fingernail being present in food sold by Rouse’s. Mr. Bennett stated that Rouse’s standard operating procedure requires all employees to wear gloves while handling food. Mr. Bennett checked the deli department right after Ms. Small reported the incident, and all the employees were wearing gloves at that time. He conceded that he could not state with one hundred percent certainty that no employee had broken the rules that day by not wearing gloves. The deli is staffed by five to ten employees at any given time, two of whom ■are managers certified by the Serve Safe program. The other employees receive on-the-job training from the managers. Mr. Bennett testified that the lunch buffet was put out at 11:00 a.m.
The final witness was Willard Bouquet, the insurance claims adjustor for Rouse’s. He testified that there was no record of any prior claims. (incident reports) made by Ms. Small against Rouse’s. However, 'when he interviewed Ms. Small, she told him that on prior occasions, she had complaints about spoiled meat, spoiled bread pudding and. an out-of-date wine cooler from Rouse’s.[1].'Mr. Bouquet further testified that he had been told by Tommy Rouse (a store owner) to send out the letter banning Ms. Small from Rouse’s. Mr. Bouquet explained that every person who files suit against Rouse’s does not receive the “ban” letter. He said whether or not to ban a customer was an individual décisioh made by the owners in light of the circumstances of each case. He testified that when someone is banned, |fiRouse’s sends the “ban” letter to the customer by certified mail; no one else is informed.
 Rousé’s argues that the trial court was manifestly erroneous in finding liability on the part of the store based on the evidence. Rouse’s contends that because there was no evidence showing how the fingernail got into the food that was purchased by Ms. Small, and there was no evidence that anyone at Rouse’s did anything inappropriate while preparing or handling the food, the plaintiff failed to prove that Rouse’s breached its duty to her.
*216 The plaintiff counter argues that the trial court appropriately applied the theory of res ipsa loquitur to infer negligence on the part of Rouse’s under the circumstances presented here. As this court has stated:
Res ipsa loquitur is a rule of circumstantial evidence which permits the fact finder to infer negligence where 1) the circumstances surrounding the event are such they would not normally occur in the absence of negligence on someone’s part, 2) the instrumentality was in the exclusive control of the defendant, and 3) the negligence falls within the duty of care owed the plaintiff.
Zumpe v. Zara’s Little Giant Super Mkt., Inc., 2009-1255, p. 5, n.1 (La. App. 4 Cir. 3/24/10), 35 So.3d 1158, 1161(Citation omitted).
In this case, there is no question that the first and third criteria for the application of res ipsa loquitur exist under these facts.[2] Rouse’s argues, however, that the second criterion is absent because food set out in a self-serve buffet, by ^definition, is no longer in the exclusive control of those who prepared the food and/or set up the buffet.
We agree that generally, once food has been placed on a self-serve buffet, it is no longer in the exclusive control of the preparer. However, in this case the trial court made a factual finding that Ms. Small was, if not the first, then one of the first, customers at the buffet that day and that, therefore, the food was undisturbed. The court reasoned:
... because the incident occurred so close in proximity to the time period where the food was placed on the steamer, that’s my problem with the liability argument of the defendant. If it had been 12:30 or 1:00, and we know that there is a rush pass through there, that’s a different conversation, but this is not a situation where... this is a situation where the plaintiff was, if not the first person but one of the first people to pass through there....
Considering the evidence, we cannot say that this factual finding of the trial court is manifestly erroneous. The evidence shows that Ms. Small arrived at the store within the first five or ten minutes after the lunch buffet was put out, and she testified that the food on the buffet appeared to be undisturbed. Rouse’s presented no evidence to refute that the food on the buffet had been touched by anyone other than employees of Rouse’s at the time Ms. Small made her plate. Considering these facts, the trial court’s inference of negligence is not manifestly erroneous.
CONCLUSION
Accordingly, for the reasons stated, we affirm the judgment of the trial court.
AFFIRMED

. On redirect examination, Ms. Small testified that she had not actually voiced complaints about these prior purchases, except for the spoiled meat, about which she had telephoned the store. Although instructed to bring the meat back for a refund, Ms. Small had not done so.

. The record indicates that the trial court made a factual finding that the object in Ms. Small's food was a fingernail, which would not normally be there in the absence of negligence, as opposed to a chicken bone.