Filed 11/18/25  Shochat v. Cohen CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AMOS SHOCHAT,<br><br>　　　　Petitioner and<br>　　Appellant,<br><br>　　v.<br><br>YORAM COHEN,<br><br>　　　　Respondent. | B335222<br><br>(Los Angeles County<br>Super. Ct. No.<br>23STRO00753) |

APPEAL from an order of the Superior Court of Los Angeles County, Gary C. Eto, Judge.  Affirmed.

Amos Shochat, in pro. per., for Petitioner and Appellant.

Westwood Lawyers and Lottie Cohen for Respondent.

———————————————

Amos Shochat appeals from an order denying his request for a civil harassment restraining order (CHRO) against Yoram Cohen.  Shochat contends the trial court abused its discretion by barring him from calling Yoram's wife, Lottie Cohen (who

represented Yoram at the hearing),[1] as a witness and by not considering other evidence of harassment Shochat claimed he provided to the police and other government agencies. Shochat also contends he presented sufficient evidence to support issuance of a CHRO. Finally, he argues the court erroneously made credibility determinations in granting Yoram's motion to dismiss at the close of Shochat's evidentiary presentation. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Shochat's Request for a Restraining Order*

Shochat, representing himself, filed his request for a CHRO on February 6, 2023, and the operative first amended request on April 23, 2023. The request stated Yoram worked for the apartment building where Shochat lived, and it sought an order prohibiting Yoram from harassing or contacting Shochat and requiring Yoram to stay 100 yards away from Shochat and his home, car, and workplace.

In an attachment to his request, Shochat described three incidents of alleged harassment. In May 2022 Shochat was sitting outside his apartment when Yoram exited a car, crossed the street toward him, "came close to [Shochat] with a fist closer and closer," then left after Shochat called 911.

In or around July 2022, Yoram came to Shochat's apartment "with another person and pushed himself inside . . . to check something for a short time." Shochat initially told Yoram

---

[1] We refer to Yoram Cohen and Lottie Cohen by their first names to avoid confusion.

2

not to come in but then let Yoram inside because Shochat "was afraid of what [would] happen" if he refused.

In the most recent incident on January 28, 2023, Yoram came to Shochat's apartment to serve a notice to enter dwelling, and Shochat saw Yoram opening and reaching into Shochat's mailbox. After Shochat began filming the incident, Yoram "charg[ed] at [Shochat] from the right side and hit [him] in the shoulder and the face." Yoram then approached Shochat again, started pushing him backward, and continued to approach him despite Shochat shouting and warning that he would call 911.[2]

Shochat attached to his request copies of multiple notices to enter his dwelling unit from late 2022 to early 2023 signed by Lottie as the landlord and owner, screenshots from videos allegedly taken during the May and July incidents (with handwritten notes narrating what is purportedly shown in the videos), and a largely illegible police report pertaining to the January 28, 2023 incident.

B.    *Pre-hearing Proceedings*

From the time Shochat filed his original CHRO request in February 2023 to July 2023, Shochat had difficulty serving Yoram with notice of his request and the hearing date. However, on July 25, 2023, after Shochat testified to his attempts to serve Yoram at three addresses, the trial court authorized Shochat to provide alternative service by certified mail with return receipt requested. On August 22 Shochat and Lottie (representing

---

[2]    Shochat's request also cited two other incidents when he was "attacked by twin brothers who cornered [him], and raised their hands in [his] face." Shochat stated he believed the brothers acted based on "[Yoram's] involvement."

3

Yoram) appeared in court for the hearing on the CHRO. However, a Hebrew language interpreter was not available for Shochat, and the court continued the hearing to September 26, 2023.

On September 15, 2023 Shochat served Lottie by mail with a subpoena duces tecum for personal appearance and production of documents at the September 26 hearing.[3] The trial court continued the hearing to October 19 because an interpreter was still not available. On October 16 Yoram filed objections to Shochat's subpoena with a supporting declaration from Lottie, arguing service was defective and untimely under Code of Civil Procedure section 1987.[4]

C.   *The Hearing on Shochat's Request for a CHRO*

The trial court held a hearing on Shochat's request for a CHRO on October 19, 2023. A Hebrew language interpreter translated for Shochat. The court began the hearing by explaining it would accept the statements and allegations in Shochat's request as his testimony, the court would summarize those statements, and Shochat could correct the court's summary or provide additional details.

Shochat testified at the hearing that he had been living in his apartment building for nine years and was told by Lottie that Yoram was serving as the building's manager. The May 2022

---

[3]   On our own motion, we augment the record to include the proof of service Shochat filed on September 15, 2023 with respect to his service of the subpoena duces tecum on Lottie. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

[4]   Further undesignated statutory references are to the Code of Civil Procedure.

4

incident was the "first attack." Shochat stated he was sitting on the grass on the side of the road when Yoram exited Lottie's vehicle and started walking toward Shochat. Shochat told Yoram to stay away several times as Yoram approached. But, as Shochat explained, Yoram "continued coming towards me" and "pushed his hand against my face, . . . [a]nd his ring was pushed into my eye socket."

With respect to the July 2022 incident, Shochat explained that Lottie tried to serve him with a "forged" service order, but he would not let her in. A few minutes later Yoram came with a second man, who was six feet tall and weighed at least 300 pounds. Yoram pressured Shochat to permit his entry, blocked the door, and started coming in. Shochat was afraid and stepped aside. Once Yoram was inside, he started taking pictures despite Yoram's request to stop. The second man prevented Shochat from leaving.

Shochat explained with respect to the January 28, 2023 incident (described in the request as when Shochat hit Yoram in the face and right shoulder), that Yoram served him with a "falsified" notice to enter his apartment. Shochat was videotaping the service, and he suddenly "felt an impact and a push on [his] right side" by Yoram. Several seconds later, Yoram approached him again. Shochat started yelling to stay away from him, but Yoram came closer and was "not more than two . . . inches" away when Shochat put up his arm to prevent Yoram from hitting him.[5]

---

[5] Shochat started to testify regarding a fourth incident in 2022 involving a contractor forcibly entering his apartment and "cuss[ing] him out." Shochat stated the contractor said he was sent by Yoram, but the trial court sustained Yoram's objection on

5

Shochat then offered to present videos of the three incidents,[6] and the trial court directed him to first show "the best one you have." As described by the court, the first video depicted a man (who the court assumed was Yoram) "walking across the street in a suit with his hands in his pocket. . . . [¶] . . . with his hand up not wanting to be videoed, apparently." The man then "seem[ed] to be moving away or at least moving to . . . [his] left" before "walking away, then turning to say something . . ., and then crossing the street again with his hands in his pocket." The court stated the video was "of little or no probative value" because "it [did]n't depict an act."

The trial court next asked Shochat if he had another video showing Yoram attacking him. Shochat played a video that the court described as showing a man (again, presumably Yoram) stooping over a box, picking something up, and then "walking away . . . holding something." The video then showed Lottie sitting in a car. The court stated it did not see Shochat or any assault or attack in the video. Shochat responded that he was holding the camera. Shochat next presented a photograph of himself holding a newspaper purchased a few days after the January 2023 incident to "prove that [Yoram] hit [him]." The court described the photograph simply as "a picture of [Shochat] holding a newspaper."

The trial court then inquired whether Shochat had anything else to present, and Shochat stated he "would like . . . to

the basis there was no evidence Yoram sent the person. Shochat does not challenge this ruling on appeal.

[6]     None of the videos Shochat offered at the hearing is part of the record on appeal. However, the trial court described the content of the videos as they were played.

6

get access to the subpoena materials that are in the file." The court noted Yoram had filed objections to two subpoenas duces tecum Shochat had served on Lottie. The court sustained the objections on the basis the subpoenas were improperly served by mail.

Yoram then moved to dismiss Shochat's request for a CHRO on the basis he had not shown credible evidence of violence or threats of violence. In response, the trial court asked, "Do you have any other evidence, Mr. Shochat?" Shochat responded, "No, I don't, but—I don't." The court stated it had "heard the evidence, read the files, . . . and observed [Shochat] testify and his demeanor, [and the] court does not find petitioner credible. [The] court finds that the petitioner has not sustained his burden of proof by clear and convincing evidence." On this basis, the court denied Shochat's CHRO request.

Shochat timely appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*

Under section 527.6, subdivision (a)(1), "[a] person who has suffered harassment . . . may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section." "Harassment" is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).)

"Unlawful violence" is "any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but does not

7

include lawful acts of self-defense or defense of others." (§ 527.6, subd. (b)(7).) An "assault" is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, § 240.) A "battery" is "any willful and unlawful use of force or violence upon the person of another." (Pen. Code, § 242.) "Credible threat of violence" is a "knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose." (§ 527.6, subd. (b)(2).)

"Course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email." (§ 527.6, subd. (b)(1).)

"'Section 527.6 was enacted "to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution." [Citations.] It does so by providing expedited injunctive relief to victims of harassment.'" (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1227, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7; accord, *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1412.) "If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).)

"[W]hen presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing

8

evidence, the court [generally] must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B., supra*, 9 Cal.5th at p. 1005.) However, "'[i]n a case where the trier of fact has determined that the party with the burden of proof did not carry its burden and that party appeals, "it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment [or order]." [Citations.] Instead, "where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence *compels a finding in favor of the appellant as a matter of law*." [Citation.] Specifically, we ask "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"' [Citation.] This is 'an onerous standard' [citation] and one that is 'almost impossible' for a losing [party] to meet, because unless the trier of fact made specific factual findings in favor of the losing [party], we presume the trier of fact concluded that '[the party's] evidence lacks sufficient weight and credibility to carry the burden of proof.'" (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651; accord, *In re A.P.* (2024) 103 Cal.App.5th 1137, 1142.)

9

B.	*The Trial Court Did Not Err in Denying Shochat's Request for a Restraining Order*[7]

1.	*The trial court did not erroneously bar Shochat from calling Lottie as a witness*

Shochat contends the trial court erred by prohibiting him from calling Lottie as a witness at the October 19 hearing. However, the record shows Shochat never made this request. As discussed, Shochat provided his own testimony at the October 19 hearing, and the court considered two videos of incidents he alleged in his request for a CHRO. When the court asked Shochat whether he had any additional evidence, Shochat requested access to the documents he had subpoenaed, but he did not request to examine Lottie. After Yoram moved to dismiss Shochat's request for a CHRO, the court provided Shochat yet another opportunity to present further evidence, asking "do you have any other evidence?" Shochat responded by stating, "Well, no, I don't, but—I don't. [¶] . . . [¶] He attacked me. I'm not lying." Then he added, "And there are many people who are attacked, and they don't have a video of the attack." Shochat did not make any further statements or request to call Lottie or any other witness. In the absence of a request by Shochat to call

---

[7]	We do not address the following issues that were raised by the parties in their appellate briefing because they are not relevant to this appeal (many of which are also not supported by an adequate record): Shochat's current mental state; Shochat's prior and ongoing civil harassment lawsuits against Yoram and Lottie; and the history of inspection and repair notices for Shochat's apartment. We also do not reach Shochat's contention the trial court erred in failing to accept a prior proof of service of his request for CHRO on Yoram. Because Yoram was ultimately served, this issue is not before us on appeal from the CHRO.

Lottie as a witness, he forfeited his challenge to the denial of his right to examine Lottie.  (*Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 687 [appellant's failure to request live testimony at a hearing forfeited his right to challenge denial of right to examine witness]; see *In re Marriage of Cohen* (2023) 89 Cal.App.5th 574, 582 [same].)[8]

2.      *Shochat's evidence did not compel a finding of harassment as a matter of law*

Shochat contends the trial court erred because he presented sufficient evidence to support issuance of the CHRO, including his testimony, the videos, and the photographs. Shochat has failed to meet his burden to show the evidence he presented compels a finding of harassment as a matter of law.

Shochat argues the videos he presented at the hearing show the "attacks and assaults" by Yoram.  The record does not support this contention.  Although Shochat testified that in May 2022 Yoram approached him with his fist extended and pushed his ring into Shochat's eye socket, the first video played (which appears to be of the May 2022 incident) only showed

---

[8]      Shochat does not contend his request to "access . . . the subpoena materials" was intended as a request to call Lottie as a witness (as opposed to obtaining subpoenaed documents).  In any event, Shochat's service of the subpoena duces tecum on Lottie was defective.  Under section 1987, subdivision (a), a subpoena compelling a nonparty witness's attendance must be served personally.  (See § 1987, subd. (a) [with limited exceptions for public employees, "the service of a subpoena is made by delivering a copy, or a ticket containing its substance, to the witness personally"].)  The proof of service Shochat lodged with the court shows he served the subpoena on Lottie by mail.

11

Yoram walking with his hand up to avoid being recorded before he walked away. Similarly, Shochat testified that Yoram hit him in the shoulder and face on January 28, 2023, but the second video Shochat played (which appears to be of that incident) did not show any assault or attack. According to the court's colloquy with Shochat during the hearing, these were the best videos Shochat had of the alleged incidents of harassment. Shochat also relies on photographs of bruises on his face, but the record does not contain any photographs showing bruises.

The trial court weighed the video and photographic evidence, along with Shochat's testimony at the hearing and in his CHRO request, and after determining Shochat lacked credibility, the court found he had not provided clear and convincing evidence of harassment. We defer to the court's credibility findings and do not reweigh the evidence. (*Herriott v. Herriott* (2019) 33 Cal.App.5th 212, 223 ["It was for the trial court to weigh the evidence and consider the demeanor and credibility of the witness, as 'credibility issues [are] routinely resolved by [the] trier[ ] of fact.'"]; *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1426-1427 ["the trial court was in the best position to evaluate credibility and to resolve factual disputes"].)

Shochat also argues the trial court abused its discretion by not considering evidence presented to various government agencies including the Los Angeles Police Department and the Los Angeles County District Attorney's Office. However, the only documents in the record from governmental entities are a largely illegible police report for the January 2023 incident and two letters from the Los Angeles Housing Department confirming receipt of housing violation complaints filed by Shochat. Shochat

12

has failed to identify any other documents in the record that support his contention. (See *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 996 [on appeal, "'"the appellant bears the burden of providing an adequate record affirmatively proving error"'"]; *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970 [same].) The documents in the record do not provide evidence of harassment by Yoram and therefore do not compel a finding in his favor.

>   3.  *The trial court did not misapply the standard for ruling on a request for a CHRO*

Shochat contends the trial court erred in denying his request for CHRO because the court improperly based its decision on Shochat's credibility instead of accepting Shochat's evidence as true, as required in ruling on a motion for nonsuit under section 581c.[9] Shochat is correct that a court, when ruling on a section 581c motion for nonsuit, may not consider witness credibility. (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 118; *Murray's Iron Works, Inc. v. Boyce* (2008) 158 Cal.App.4th 1279, 1285.) However, section 581c only applies to a motion for a judgment of nonsuit in a jury trial. (See § 581c, subd. (a) ["Only after, and not before, the plaintiff has completed his or her opening statement, or after the presentation of his or

---

[9]    At the hearing, Yoram requested the trial court "dismiss the case," without specifying a section of the Code of Civil Procedure. In his respondent's brief, Yoram incorrectly characterized the motion as an oral motion for nonsuit pursuant to section 581c. However, the court never treated the motion as one for a nonsuit, nor, as we discuss, would a section 581c motion have been proper.

13

her evidence in a trial by jury, the defendant, without waiving his or her right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit."].)

Requests for a CHRO are tried before the trial court, which serves as both the factfinder and decisionmaker. (See § 527.6, subd. (i) ["At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment."].) "[I]n a trial by the court a motion for nonsuit is not recognized. The correct motion is for judgment pursuant to Code of Civil Procedure section 631.8, the purpose of which is to enable the court, after weighing the evidence at the close of the plaintiff's case, to find the plaintiff has failed to sustain the burden of proof, without the need for the defendant to produce evidence." (*Ford v. Miller Meat Co.* (1994) 28 Cal.App.4th 1196, 1200; accord, *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 315, fn. 23.) Moreover, in a motion for judgment under section 631.8, unlike a motion for nonsuit, "the trial court *must* decide questions of credibility, *must* weigh the evidence, and *must* make findings of fact." (*Lingenfelter v. County of Fresno* (2007) 154 Cal.App.4th 198, 204, italics added; see *Jazayeri*, at p. 314, fn. 23.)

We therefore construe Yoram's motion to dismiss, made at the close of Shochat's case, as a motion for judgment in a court trial under section 631.8. (See *Jazayeri v. Mao*, *supra*, 174 Cal.App.4th at p. 314, fn. 23 [deeming a mislabeled motion for "nonsuit" as made under section 631.8].) Accordingly, the

14

trial court permissibly weighed the evidence and made credibility determinations at the October 19 hearing.

## DISPOSITION

The order denying Shochat's request for a civil harassment restraining order against Yoram is affirmed. Yoram is to recover his costs on appeal.

FEUER, J.

We concur:

SEGAL, Acting P. J.

STONE, J.